SOVEREIGN CAMP OF WOODMEN OF
THE WORLD v. JACKSON.

(Court of Civil Appeals of Texas.   Galveston.
May 20, 1911.   Rehearing Denied
June 7, 1911.)

1. INSURANCE (§ 817*) — LIFE INSURANCE —
DEATH FROM VIOLATION OF LAW—BURDEN
OF PROOF.

On the question whether insured was the
aggressor in the difficulty in which he lost his
life, and so was within the condition of the cer-
tificate on his life that it should be void, should
he die in consequence of the violation or at-
tempted violation of the laws, insurer has the
burden of proof.

[Ed. Note.—For other cases, see Insurance,
Dec. Dig. § 817.*]

2. TRIAL (§ 139*)—TAKING CASE FROM JURY
—WEIGHT AND SUFFICIENCY OF EVIDENCE.

A case cannot be taken from the jury, un-
less the facts are so clear and convincing that
there is no room for fair and reasonable minds
to reach different conclusions.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 332, 333, 338–341; Dec. Dig. § 139.*]

3. INSURANCE (§ 825*) — LIFE INSURANCE —
DEATH FROM VIOLATION OF LAW — EVI-
DENCE.

Evidence, in an action on a life certificate,
*held* to make a question for the jury whether
insured was the aggressor in the difficulty in
which he lost his life, as regards the condition
that, should he die in consequence of the viola-
tion or attempted violation of the laws, the cer-
tificate should be void.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 2009; Dec. Dig. § 825.*]

4. EVIDENCE (§ 588*)—CREDIBILITY OF WIT-
NESSES.

Though testimony of witnesses is uncontra-
dicted, it may be disbelieved by the jury; the
concern of one of them not to make any dam-
aging statements that might be available against
him in a criminal prosecution being apparent,
and the other refusing to testify as to certain
material facts, and his testimony given being of
doubtful meaning.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 2437; Dec. Dig. § 588.*]

Appeal from District Court, Harris County;
Norman G. Kittrell, Judge.

Action by Mrs. Lola M. Jackson against
the Sovereign Camp of Woodmen of the
World.   Judgment for plaintiff.   Defendant
appeals.   Affirmed.

Arthur H. Burnett and E. P. & Otis K.
Hamblen, for appellant.   Hogg, Gill & Jones
and J. C. Townes, Jr., for appellee.

STONE, Special Associate Justice.   Mrs.
Lola M. Jackson, appellee, filed suit in the
district court of Harris county, on Febru-
ary 1, 1909, alleging that appellant issued a
certificate to her deceased husband, George
W. Jackson, on the 6th day of July, 1904, in
the sum of $2,000; that she (appellee) was
named as beneficiary in said certificate; that
George W. Jackson was killed on the 28th
day of July, 1908, at which time all dues, as-
sessments, etc., were paid on said certificate,
and that same was in full force and effect.
On January 10, 1910, appellant (defendant
below) filed its first amended original an-

swer, admitting the issuance of said cer-
tificate as alleged by plaintiff below, setting
out the conditions of the said certificate, and
charging that the insured had met his death
as a result of violating one of the conditions
of the certificate, namely, section 66, which
provides that, "If any member of this order
should die * * * in consequence of the
violation or attempted violation of the laws
of any state or nation," the certificate shall
be null and void.

The case was tried before a jury on the
11th, 12th, and 13th of January, 1910, and a
verdict and judgment was rendered in favor
of appellee for $2,000, with interest at 6 per
cent. from July 28, 1908; total judgment,
$2,175.

On the trial below it was agreed by
counsel for both plaintiff and defendant that
George W. Jackson, the deceased husband of
plaintiff, was at the date of his death a mem-
ber of the local camp of defendant at
Pierce, Tex., holding the beneficiary cer-
tificate sued upon, with all dues and charges
paid; that George W. Jackson was dead;
that payment of said certificate by defendant
had been refused, and that it waived proof
of the sufficiency of one assessment on its
membership to cover payment of claim sued
on.   It was further agreed that defendant is
a fraternal beneficiary association, with per-
mit to do business in Texas, and was such
during all of the time George W. Jackson
was a member of the association; that cer-
tain attached copies were true copies of con-
stitution and by-laws of defendant, and in
force when Jackson was insured or became
a member, and until and when he was killed;
that in due time defendant tendered to plain-
tiff all dues and assessments paid it by Jack-
son and further tender was waived.

The certificate issued to Jackson provided
that: "If the member holding this certificate
* * * should die in consequence of the vio-
lation or attempted violation of the laws of
the state or United States * * * this
certificate shall be null and void and of no
effect."   The defendant contended below, and
contends here, that George W. Jackson came
to his death as a result of an unlawful as-
sault upon one R. B. Pointer, thereby void-
ing the certificate by virtue of the condition
thereof last above set out.

The death of George W. Jackson was
caused by a pistol shot fired by R. B. Point-
er.   On the afternoon of the 28th of July,
1908, Jackson went from his residence to the
store of A. P. Borden & Co., at Pierce, Tex.,
where a difficulty ensued between him and
Pointer.   The evidence of many witnesses
was given by deposition upon the trial of
the case, but evidence upon material facts is
both meager and conflicting.   The substance
of the testimony of the various witnesses is
that the first encounter, or at least the first
difficulty between Pointer and Jackson, oc-

curred some distance within the store, and, with the exception of the testimony of Pointer, who killed Jackson, and of the witness Ustynik, no other witness testified to seeing the beginning of the difficulty. The evidence does not disclose how Jackson proceeded from the point where the difficulty began to the place on the porch outside of the storeroom, where the evidence shows he procured the iron bar, or how he returned to the inside of the store. Evidence was conflicting as to how far inside of the door opening on the porch of the store Jackson was when he was killed, and as to how far within the store from the door Pointer was when he shot Jackson, but the evidence is uniform that they were not more than five or six feet apart. The evidence is uncertain as to whether there was a second encounter, but, giving to the testimony the reasonable interpretation, it appears that there was but one encounter, which was shifted from a point well within the store to a point near the door, at which place Jackson was killed.

The appellant introduced the testimony of the witness Pointer, who killed Jackson, and of the witness Ustynik, for the purpose, evidently, of showing that Jackson was the aggressor in the difficulty. The evidence failed to show who was the aggressor, unless that fact be established by the testimony of the witnesses, Pointer and Usynik. Pointer testified that Jackson came into the store at about 5:30 o'clock in the afternoon, where he was waiting upon some customers, and, meeting him (Pointer) in the store, caught him by the arm and asked him, "What about stamps?" to which Pointer replied, "Wait and I will explain." Whereupon Jackson said, "I will fix you," struck him, and knocked him unconscious; that when he came to Jackson was on top of him, and had his hands around his neck; that he (Pointer) ran behind the counter into the post office, got his revolver, came from behind the counter, and shot Jackson, who was advancing upon him from the front of the store with an iron bar raised over his shoulder, as if to strike.

No other witness saw the beginning of the difficulty, or heard what was said by either party, unless the testimony of the witness Ustynik can be so construed. Ustynik testified: "I was present when Mr. Geo. W. Jackson met his death in the store of A. P. Borden & Co. I was on the porch as he came by, going in. I saw him when he struck Mr. Pointer. Mr. Pointer was waiting on some ladies. I could not hear what Mr. Jackson said to Mr. Pointer, as I was on the porch. He hit Mr. Pointer, and Mr. Pointer was bloody and had a black eye. I do not know what was said by either one. They were scuffling when I first saw them and went to them." This witness declined to answer certain questions propounded by plaintiff's attorneys, but his evidence was taken by plaintiff.

The testimony of the witnesses was conflicting as to whether Jackson was advancing on Pointer or Pointer on Jackson, when Jackson was killed, and no witness testified as to how or under what conditions Jackson came from the inside of the store more than 20 feet from the front door to the porch where, presumably, he got the iron bar which he had when killed. There is no evidence to show the movements of the parties after their first encounter until Jackson was killed, except that Pointer went behind the counter into the post office, got his pistol, and came back from behind the counter nearer the door, where he shot Jackson.

On cross-examination Pointer was asked, "Is it not a fact that just prior to your shooting and murdering Mr. G. W. Jackson that he came into the store of A. P. Borden & Co., where you worked, at Pierce, Tex., and that the said G. W. Jackson came unarmed to discuss with you the insult and humiliation that you heaped upon his daughter?" He replied, "I answer, 'No.'" In reply to the question, "Is it not a further fact that you grabbed a heavy tobacco knife from the counter and attempted to kill G. W. Jackson with same?" "I answer, 'I do not know.'" In reply to the question, "Is it not a fact that said G. W. Jackson took said tobacco knife away from you, and could easily have killed you with it, but, instead of doing so, he quietly put it down on your counter, took his hat, and left your store?" "I answer, 'I do not know.'"

The evidence shows that Pointer came from behind the counter with pistol in his hand, but it was conflicting as to whether he was then in the act of shooting Jackson. Mr. Collins, a clerk in the store of Borden & Co. with Pointer, refused to answer any questions propounded to him by plaintiff as to what occurred between Jackson and Pointer, or to make any statement as to the position the parties occupied at time of and before shooting, or as to whether Jackson was advancing on Pointer, or where Pointer got his pistol. At the time of taking depositions of both Pointer and Collins, Pointer was then under indictment for the killing of Jackson, and his case was pending. Pointer admitted that he consulted his lawyers as to his answers in this case before giving them.

[1] The principal question in this case is, Was Jackson the aggressor in the difficulty in which he lost his life? The burden of establishing this was upon the defendant below, in order to bring the case within the conditions of the certificate.

[2] The appellee contends that the trial court should have peremptorily instructed the jury to return a verdict for it. It is well settled in this state that the trial court cannot properly take from the jury the consideration of the case, unless the facts are so clear and convincing as that there is no room for fair and reasonable minds to reach

different conclusions. Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 789; Mitchell v. McLaren (Civ. App.) 51 S. W. 270.

[3] Viewing the record in this case, we are of the opinion that the trial court properly refused the request of appellee for peremptory instruction in its favor.

[4] The principal remaining assignment of the appellee is that the verdict of the jury was against the great weight and preponderance of the evidence. The vital fact under this assignment is, Who was the aggressor and who provoked the difficulty? The appellant assumed the burden of showing that Jackson was, and in support of that contention introduced the evidence of Pointer, taken at a time when he was under indictment for the killing of Jackson. It also introduced the deposition of Collins, who was an associate employé with Pointer in the store of Borden & Co. The answers of Pointer to some of plaintiff's interrogatories, given at a time when his own personal protection and safety must naturally have been the uppermost consideration with him, his failure to know whether he drew a tobacco knife and attempted to injure Jackson with it, and refusal of Collins to testify to material matters affecting his associate, may have caused (and properly so) the jury to look with suspicion and distrust upon the remainder of Pointer's evidence, especially upon that part wherein he makes Jackson the aggressor. So, also, the jury must have disbelieved the testimony of Ustynik that Jackson struck the first blow. His testimony as given is of doubtful construction and it was within the province of the jury to disbelieve the same, if it did not appear to be free from suspicion and clear in meaning.

The testimony of Pointer and of Ustynik is uncontradicted, it is true; but, if Pointer does not come within the class of interested witnesses, his concern in not making any damaging statements was so evidently apparent to the jury that they refused to accept it as true. And Ustynik's refusal to testify for plaintiff as to material facts, and his statement of that which exonerated Pointer as not being the aggressor, likewise found disfavor with the jury. It is not sufficient that this testimony was uncontradicted. Coats v. Elliott, 23 Tex. 613; Railway Co. v. Runnels, 92 Tex. 305, 47 S. W. 972; Heierman v. Robinson, 26 Tex. Civ. App. 491, 63 S. W. 658; Insurance Co. v. Villeneure, 29 Tex. Civ. App. 128, 68 S. W. 206.

The statement of counsel for plaintiff in objecting to the testimony of Collins, to whom he referred as the notary who took the deposition of Pointer, "the man who murdered Jackson," was improper, and if the case were such that it appeared that injury had resulted to appellee we would reverse and remand the case. However, the court at once reprimanded counsel, and instructed the jury not to consider the improper remarks of counsel. We are aware that admonition of the court to the jury is frequently ineffective, but in the instant case we think no injury resulted to appellee.

There are various other assignments of error by appellant, addressed chiefly to the admission of evidence, all of which we consider were harmless, if error.

Appellee insists that, if the evidence did establish the fact that Jackson was the aggressor in the first instance, the plaintiff would still be entitled to recover, because Jackson had abandoned the first difficulty and left Pointer in the store, when Pointer seized his pistol and shot him. This insistence of appellee raises the question of a second difficulty, which, in our opinion, is not supported by the evidence. The testimony only shows that the scene was shifted from a point well within the store to a point nearer the door, with no evidence showing any cessation of the first difficulty, and therefore by the record there was but one difficulty.

Appellee also raises the question of the extent to which Pointer was legally justified in going, in order to repel the assault of Jackson, if it should be established that Jackson was the aggressor in the first instance, and thereby the further question of whether Jackson should or should not be held to have reasonably contemplated the disastrous consequences to himself. In the view which we take of the case, the question of whether Jackson precipitated the difficulty, without lawful right to do so, in such a way as to bring him within the clause of the certificate voiding the policy, if he met death as a "consequence of a violation or attempted violation of the laws of the state of Texas," as specifically alleged by defendant below, was fairly and clearly raised by the pleadings of the parties, and by the testimony given on trial. Appellant does not complain of any error of the court in submitting the issues to the jury, and, in view of our declination to disturb the finding and verdict of the jury, we do not deem it necessary to consider the incidental question of comparative acts of assault and defense of the principal actors in the difficulty.

We find no error, and affirm the judgment of the trial court.

Justices REESE and McMEANS, being disqualified, the Governor appointed O. T. HOLT and THOS. H. STONE Special Associate Justices. They sat with Chief Justice PLEASANTS in this case.