HADNOT et al. v. HICKS. (No. 138.)

(Court of Civil Appeals of Texas. Beaumont.
Oct. 29, 1917. Rehearing Denied
Nov. 14, 1917.)

1. HUSBAND AND WIFE ☞270(8)—CONVEYANCE—EVIDENCE—SUFFICIENCY.

In trespass to try title by a wife and minor children of the marriage to recover land which had belonged to the community of the wife and her deceased husband and had been conveyed by the wife during the lifetime of the husband without his joinder, evidence *held* to warrant findings that at the time of the conveyance the husband had abandoned his wife, and that sale of the property was necessary for the support of the wife and minor children.

2. APPEAL AND ERROR ☞1010(1)—REVIEW —FINDINGS.

Where a question of fact is submitted to the court without a jury, a finding by the court is as conclusive as a verdict by the jury, and, if supported by evidence, is conclusive on appeal.

3. EVIDENCE ☞590 — WEIGHT AND SUFFICIENCY—INTERESTED PARTIES.

The testimony of vitally interested parties may be disregarded in toto.

4. VENDOR AND PURCHASER ☞175—PAYMENT —FINDING.

Where the vendor warranted title though the land was subject to taxes and the purchaser deducted the amount of such unpaid taxes from the amount due on purchase-money note, which sum was received and retained by the vendor without complaint, a finding that the purchaser had paid for the land is warranted.

5. HUSBAND AND WIFE ☞270(7) — PLEADING—SUFFICIENCY.

In trespass to try title to land conveyed by a married woman without the joinder of her husband, though it was part of the community estate, defendant, having pleaded not guilty specially, answered that the deed from the married woman to him was duly executed by her, though it was not affirmatively stated that it was necessary to sell the property. *Held*, that in the absence of exceptions that the answer stated only the pleader's conclusions, evidence that the married woman had been abandoned by her husband and found it necessary to sell the land for the support of herself and minor children was admissible, despite the rule that a defendant who follows a formal plea of not guilty by a special allegation of his title will not be permitted to show any title other than that specially pleaded.

6. APPEAL AND ERROR ☞275—REVIEW—PRESUMPTIONS.

Exceptions not acted upon by the trial court will, on appeal, be presumed to have been waived, in the absence of any showing that the trial court's action was invoked.

7. TRESPASS TO TRY TITLE ☞35(2)—ACTIONS —PLEADING.

Defendant in trespass to try title, who follows a formal plea of not guilty by specially pleading his title, will not be permitted to show any title other than that specially pleaded.

8. HUSBAND AND WIFE ☞270(8) — EQUITABLE ESTOPPEL—EVIDENCE.

In trespass to try title brought by a widow and minor children of the marriage to recover land which had constituted part of the community estate of the widow and her deceased husband and had been conveyed by her during her husband's lifetime without his joinder, evidence that she stated to others than the grantee that she had been abandoned by her husband and was in needy circumstances is admissible on the issue of estoppel interposed against the widow's claim to a portion of the land.

9. WITNESSES ☞379(2) — CREDIBILITY — IMPEACHMENT.

In such case, where the widow denied that she was in needy circumstances at the time of her conveyance or that her husband had abandoned her, such evidence was admissible to impeach her credibility.

10. APPEAL AND ERROR ☞1052(2)—REVIEW—HARMLESS ERROR.

Where similar testimony was admitted without objection, admission of testimony, though erroneous, was harmless.

11. HUSBAND AND WIFE ☞267(2) — COMMUNITY ESTATE—CONVEYANCE.

Where a husband abandoned his wife and she and children of the marriage are in necessitous circumstances, she may, without the husband's joinder or consent, convey community property passing good title.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by Fred Hadnot and another, minors, by their next friend and another, against D. J. Hicks. From a judgment for defendant, plaintiffs appeal. Affirmed.

E. M. Chester and David E. O'Fiel, both of Beaumont, for appellants. Chas. D. Smith, of Beaumont, for appellee.

HIGHTOWER, C. J. Fred Hadnot and Bessie Hadnot, minors, acting by Creacy Hadnot as their next friend, and Creacy Hadnot, individually, Sebron Hadnot and David E. O'Fiel, all of whom were plaintiffs below and appellants here, filed this suit in the district court of Jefferson county, against D. J. Hicks as defendant, and who is appellee here, to recover the title and possession of lots Nos. 7 and 8 in block No. 6 of the North addition to the city of Beaumont in said county and state, the action being one in the form of trespass to try title.

Hicks, the defendant, in addition to the statutory plea of "not guilty," interposed the following special answer, which, in view of assignments relative to such pleading, we here copy, to wit:

"And the defendant, answering further herein, says that he purchased the land described in the plaintiffs' petition from the plaintiff Creacy Hadnot by deed duly executed by her on the 24th day of December, 1909, paying therefor the sum of $650; that said property at the time defendant purchased the same was neither the separate property of said Creacy Hadnot or the community property of herself and husband, Green Hadnot; that several years prior to the time of the purchase of said property, the said Green Hadnot permanently abandoned and deserted the said Creacy and the home and family, and during said period of time, from the time of such desertion and abandonment up to and at the time defendant purchased said property, said Creacy Hadnot made the living for self and the minor children of herself, and said Green Hadnot, and managed and controlled her separate and the community estate, including the property here involved; and the said Green Hadnot during said long period of time and at the time of the purchase of said property by defendant, lived in abandonment of his said wife, Creacy Hadnot, and the home and family, and resided, and all along resided, in another state, with the purpose and intention never to return to his wife and home and family; that by reason of

such permanent abandonment, the said Creacy Hadnot had the right and authority to, and she did, control and manage her separate and the community estate of herself and husband; and she likewise, by reason of said permanent abandonment of herself and family, by her said husband, Green Hadnot, as alleged, had the right and authority to, as she did, convey said property to this defendant.

"And defendant says that if it be found that said Green Hadnot did not desert and abandon the said Creacy Hadnot and their children with the intention of permanently abandoning her and them, and was not at the time of said sale living in abandonment of her and the home and family in the sense and as above alleged, then this defendant says that several years prior to the time of his purchase of said property from said Creacy Hadnot, to wit, some time between the years 1900 and 1904, the said Green Hadnot left the state of Texas and located somewhere in the state of Oklahoma and there remained and resided until he died in the year 1913; that throughout the aforesaid long period of time, to wit, from the time he left the state of Texas, as aforesaid, and took up his residence in the state of Oklahoma, up to the time of the purchase of said property, he never lived with his wife and family; that his wife, the said Creacy Hadnot, and his and her children, remained and continued to reside in the city of Beaumont, Tex., and during said long period of time the said Creacy Hadnot lived upon and had and did exercise the management and control of her separate and the community estate of herself and husband, including the property here in question; and throughout said long period of time prior to and at the time of said sale, she made a living for herself and said minor children by her own efforts and through her management and control of said property.

"Wherefore this defendant says that, even though the said Green Hadnot had not permanently deserted and abandoned the said Creacy Hadnot and the home and family in the sense and as alleged in the first paragraph of this answer, still his removal from the confines of the state of Texas into and his permanent residence in another state, leaving the said wife in the charge, management, and control of said property, and in charge and burdened with the support of the family, vested in his wife, the said Creacy Hadnot, the right and authority to convey to this defendant the aforesaid property."

There was also a further plea interposed by defendant, which was a plea of estoppel as against the plaintiff, Creacy Hadnot, but we deem it unnecessary to further dwell upon that matter, as we deem it entirely unnecessary for consideration in disposing of this appeal.

The prayer in the answer was:

"Wherefore this defendant prays that he go hence without day as to the claim of all the plaintiffs, with costs in this behalf expended, and if it be held by the court that the plaintiffs other than the said Creacy Hadnot are entitled to recover herein and judgment is rendered in their favor accordingly, then in that event he prays for judgment against the said Creacy Hadnot for all her right, title, and interest to or in the property in controversy and the improvements thereon, and for his costs in this behalf expended, and for such other and further relief, general and special, legal and equitable, as to the court he may seem entitled."

The trial was had before the court without a jury, and resulted in a judgment in favor of appellee, defendant below, for all the land and property in controversy, and, appellants' motion for new trial having been overruled, they excepted to the judgment of the court in both particulars, and brought the case here for consideration.

The trial court filed findings of fact and conclusions of law as follows:

"Findings of Fact.

"No. 1. I find that the plaintiff Creacy Hadnot and Green Hadnot were man and wife at the time the property involved in this suit was conveyed to the defendant, D. J. Hicks, on December 24, 1909.

"No. 2. I find that Creacy Hadnot conveyed the property to the defendant, Hicks, on said last-named date, and that her husband, Green Hadnot, did not join her in the deed.

"No. 3. I find that the property was the community property of said Creacy and Green Hadnot, and was occupied by them as their homestead up to some time in 1904, when Green Hadnot left the state, and that up to the time Creacy Hadnot conveyed the property to defendant Hicks, she and her children occupied the same as a homestead, and were so occupying it at the time of said sale.

"No. 4. I find that, save and except the fact that Green Hadnot did not join therein, the deed from Creacy Hadnot to defendant Hicks, and her acknowledgment thereto were in regular form and legal.

"No. 5. I find that at the time Creacy Hadnot conveyed the property to defendant, Hicks, she had been abandoned by her husband, Green Hadnot; that he left the state of Texas some time in 1904, going to the state of Oklahoma with the intention of residing in that state, and that he never returned to the state of Texas prior to his death, which occurred in the year of 1913. While there was some testimony that some letters passed between Green Hadnot and his wife subsequent to the time of his departure and prior to her said sale of the property to the defendant, Hicks, I find that it was not the intention of Green Hadnot to return to the state of Texas; that during said period of five years up to, at the time of, and until after the sale of said property, Green Hadnot had absolutely abandoned the administration of the community affairs and his position as head of and provider for the family, and his duties and responsibilities as such, and at no time during said period of time, up to, at the time of, and until after said sale, did he support or contribute in any mode, manner, or to any extent to the support of his family; that throughout said period of time, up to, at the time of, and until after said sale, by reason of Green Hadnot's abandonment and desertion, of his position of head of and provider for the family, and his duties and responsibilities as such, the said Creacy Hadnot was burdened with, and she continuously exercised and at the time of said sale she was burdened with and exercising, full and complete management and control of said community affairs, and throughout said period of time did discharge, and at the time of said sale was discharging, all the duties and responsibilities incumbent upon the head of the family, and throughout said period of time did make, and at the time of said sale was making, the living for herself and children without aid of any sort or to any extent from said Green Hadnot.

"No. 6. I find that there was no cause shown for Green Hadnot's aforesaid abandonment and failure to discharge the duties and responsibilities as head of and to support or to contribute to the support of the family during said period of time.

"No. 7. I find that at the time Creacy Hadnot conveyed the property to defendant, Hicks, she and her children were in needy and necessitous circumstances, and that the property in question was sold by Creacy Hadnot to raise funds with which to buy necessities.

"No. 8. I find that defendant Hicks paid as a consideration for said property the sum of $650, $325 cash, giving vendor's lien note for $325, and that said note, principal, and interest was paid by Hicks.

"No. 9. I find that, at the time Creacy Hadnot sold the property in question to D. J. Hicks, she represented to him that she had been abandoned by her husband, Green Hadnot, and that he had been absent from the state of Texas for a period of more than five years, and that during said time had contributed nothing to her support, and that in making the purchase and in paying for the property the defendant, D. J. Hicks, acted and relied upon such representations and believed them to be true, and that he parted with his money upon the strength of such representations.

"No. 10. I further find that, at the time Creacy Hadnot sold the property to D. J. Hicks, she did so with the intention of leaving the state of Texas, and that she did immediately upon said sale leave the state of Texas for the state of Oklahoma, with the intention of permanently residing in that state.

"Conclusions of Law.

"I conclude as a matter of law that Creacy Hadnot, under and by reason of the facts and circumstances which existed and had long existed at the time of the sale of the property by her to defendant, Hicks, as found in the foregoing findings of fact, was vested with the right and authority to make conveyance of the property in question, as a feme sole, and that, her deed and her acknowledgment thereto being in regular form and legal, the conveyance of said property to defendant, Hicks, was valid and binding and passed the entire title.

"W. H. Davidson.
"Judge of the 58th Judicial District of Texas."

The trial court's findings of fact, in so far as the same are embraced within paragraphs 4, 5, 6, 7, 8, 9, and 10 thereof, as above set out, were duly excepted to by appellants, and such findings are duly complained of by proper assignments found in appellants' brief.

Each of such findings of fact so specified were excepted to on the ground that the same are without support in the evidence, but are wholly against the evidence, and cannot be upheld.

There are a number of assignments of error found in appellants' brief, but we think it is entirely unnecessary to discuss them all, or to discuss them in the order in which they are found in the brief, and we think a disposition of those assignments which challenge the correctness of the court's findings of fact, as embraced in paragraphs 4, 5, 7, and 8, will, in effect, dispose of all of appellants' assignments, with the exception, perhaps, of two relating to the sufficiency of the special pleas found in appellee's answer, and to which we shall briefly refer hereafter. Therefore we shall proceed to discuss such of appellants' assignments of error as relate to and challenge the trial court's findings of fact, as embraced within said paragraphs 4, 5, 7, and 8.

It is admitted that at the time the said Creacy Hadnot executed and delivered to appellee the deed in question, she was a married woman, the wife of Green Hadnot, and it is further admitted that the property in controversy and described in said deed was the community property of the said Green Hadnot and Creacy Hadnot, at the date of said deed, and that the same was, at that time, being occupied as the homestead by Creacy Hadnot and the children of said spouses. We here adopt fully the findings of the trial court as embraced in paragraph No. 4 of the findings of fact, to the effect that the deed from Creacy Hadnot to appellee was in form regular in all respects, and perfect as to her acknowledgment, save and except the fact that she was not joined therein by her husband, Green Hadnot. As shown in paragraph No. 5, the trial court found as a fact that at the time of the execution and delivery of this deed by Creacy Hadnot to appellee, Green Hadnot, the husband, was living in permanent abandonment of the said Creacy Hadnot and their children, and that at said time he was residing in the state of Oklahoma to which state he had gone several years, approximately five years, prior to such date, with the intention of permanently residing in said state of Oklahoma, and with the intention of permanently abandoning the said Creacy Hadnot, and that the said Green Hadnot had permanently abandoned all control and management of the community estate of himself and the said Creacy Hadnot, including the property in controversy, and that said Creacy Hadnot, at said date, had entire management and control, in fact, of the property in controversy; that at the time of such abandonment of Creacy Hadnot by Green Hadnot, and his removal to the state of Oklahoma, it was the intention of Green Hadnot never to return to the state of Texas, and that such intention on his part continued up to the time of his death, which occurred in the state of Oklahoma. This finding of fact, as we have stated, is challenged on the ground that the same has no support in the evidence.

[1] This assignment requires a consideration of all the facts and circumstances shown by the record, having relation to this finding. We cannot undertake, however, to set out all the testimony verbatim, but shall state the same substantially.

Creacy Hadnot, one of the plaintiffs, as a witness on the stand, testified, substantially, as follows: That Green Hadnot left Beaumont in 1904 and went to Muscogee, Okl.; that witness went with him at the time he left; that this was in the summer of 1904; that they carried with them their little girl, Bessie; that they left their two boys, Sebron and Fred, in Beaumont; that witness remained in Oklahoma with Green Hadnot about four months, and then returned to Beaumont, because one of the boys had become sick; that witness on returning to Beaumont went right back on the property in controversy as their home; that it was in the month of December that witness returned to Beaumont; that witness left Green

Hadnot in Oklahoma; that Green Hadnot remained in Oklahoma and died there in the year 1913, and that he never at any time returned to Beaumont after leaving that place in 1904; that Green Hadnot was living in Oklahoma at the time witness sold the land or executed the deed in question; that throughout all the time that witness was living in Beaumont and Green Hadnot in Oklahoma, witness managed and controlled the property in controversy and made a living for herself and three children, with the aid of the older boy, by using the premises as a rooming and boarding house; that at times witness tried to get Green Hadnot to come back to her during the time he was living in Oklahoma, or rather, as she states, wrote and asked him when he was coming back; that it was not a fact that Green Hadnot left Beaumont in company with another woman when he went to Oklahoma; that witness herself was the only woman who accompanied Green Hadnot on that trip; that Green Hadnot did not live with another woman in Oklahoma, in so far as witness knew; that when Green Hadnot left Beaumont, he did not leave witness for keeps; that in 1905 or 1906, witness tried to sell the property in controversy to a Mr. Bohrer, but Bohrer said no; that it was not a fact that witness stated to Bohrer at the time that she (witness) was a married woman, but that her husband had, a long time ago, run off to the state of Oklahoma with another woman; that she did not tell Bohrer at said time that her husband had abandoned her and run off with another woman previous to that time; that she did not tell Bohrer that the property in controversy was her separate property, and that her husband had nothing to do with it; that it was not known or reputed in the community and vicinity of this property that Green Hadnot had permanently abandoned and deserted witness; that witness never at any time told anybody that Green Hadnot had abandoned her or gone off with another woman; that at the time witness was negotiating with appellee, Hicks, for the sale of the land in controversy, Green Hadnot had been living in the state of Oklahoma for about five years; that witness knew where her husband was, and never told Hicks during such negotiations that her husband, Green Hadnot, had abandoned witness, or that she did not know where he was; that she never at any time told any one that Green Hadnot had abandoned or deserted her at any time, or that he was never coming back to Beaumont; that witness never told Judge Broughton, who was attorney for Mr. Hicks, that Green Hadnot had deserted her, or that she did not know where he was; that witness, with her two children, left Beaumont on the same day that she executed the deed in question, and joined her husband in the state of Oklahoma, on the evening of the following day; that after the sale of the property, witness and her husband acquir-

ed some property in Oklahoma, but never at any time acquired a home; that witness never had any fuss or trouble of any character with Green Hadnot; that when witness and Green Hadnot went to Oklahoma, it was for the purpose of seeing about some Indian land; that Green Hadnot went to Oklahoma because he had been injured in a railroad wreck and his capacity to earn a living had been very much impaired, and witness thought that they might acquire some Indian land in that state, for the reason that witness had Indian blood in her, and she understood that this would give her the right or entitle her to some land, and Green Hadnot was to try to secure such land on this ground; that they never got this Indian land; that there were some papers about it, but witness never received them; that after witness returned to Beaumont from Oklahoma, Green Hadnot wrote to her; that he wrote to her all the time, and that witness answered every one of Green's letters; that witness could not read or write, but she got others to write her letters; that Willie Adams wrote some of them, and a Mrs. Watts wrote some, but that Mrs. Watts was not present at the trial; that there was another man who read some of Green's letters to witness, but this man's name she did not know; that there were as many as three people who at times read Green's letters to witness; that Green Hadnot sent witness or the children a little jewelry once after he left Beaumont; that Green Hadnot's physical condition, at the time he left Beaumont, and while living in Oklahoma, was very bad, and he was unable to make a living; that he was hardly fit to do anything; that Green was willing to do for witness and the children, but that he was not able to work; that during all the time that Green Hadnot was living in Oklahoma, witness was running a rooming and boarding house on the property in controversy, and was making a living for herself and the children in that way; that witness told Green Hadnot when she reached him in Muscogee that she had sold the place, and that he did not like it; that during all the time that witness was running the rooming and boarding house, she wanted to go to her husband in Oklahoma; that Green Hadnot never did buy any place in Oklahoma, nor did he locate on any Indian land; that witness never took anybody to Judge Broughton's office to prove that she had been abandoned by her husband at the time she was negotiating with Hicks for the sale of the property; that she was asked in Judge Broughton's office how long her husband had been gone, and she told them as near as she could.

Bessie Hadnot, one of the plaintiffs, and the daughter of Green Hadnot and Creacy Hadnot, testified substantially as follows: That witness was nineteen years old at the time of the trial; that witness went with her mother and father to Oklahoma at the

time her father left Beaumont in 1904; that she and her mother stayed there in Oklahoma with her father about four months, at the end of which time she and her mother returned to Beaumont, and occupied the premises in controversy, until they were sold to Mr. Hicks in December, 1909; that her mother often received letters from her father after returning to Beaumont from Oklahoma; that at her mother's suggestion witness had searched for .these letters, but had been unable to find any of them. This witness later on stated that she burned these letters just before they went to Oklahoma the last time; that witness did not read any of the letters; that the letters came pretty often, and some of them came just before the property was sold to Hicks; that her father sent some jewelry to her mother and brother; that immediately after the property was sold, her mother and children went to Oklahoma and lived with Green Hadnot until he died; that they stayed in Oklahoma six years and then returned to Beaumont; that the property they occupied in Oklahoma was not owned by them; that her father was not able to work while they were living in Oklahoma.

Willie Adams, witness for plaintiffs, testified, substantially: That she knew Creacy Hadnot and Green Hadnot; that the Hadnots lived in the north end of Beaumont, and witness knew them before they moved to ·Oklahoma the first time; that Green Hadnot and Creacy Hadnot went to Oklahoma together; that after four or five months Creacy Hadnot came back on account of the sickness of her boy, and thereafter lived on the property in controversy as their home; that witness read most of the letters that Creacy Hadnot received from Green Hadnot after Creacy returned to Beaumont; that these letters were such as any man would write to his wife; that they were just as kind and loving as they could be; that every letter he wrote her was for her to come to him; that witness wrote the letters for Creacy Hadnot to her husband, and that she wrote a letter, telling Green when Creacy would leave and telling him to meet her, after the sale of the property in controversy was made to Hicks; that witness had never heard that Green Hadnot had run away with another woman; that witness lived in the immediate vicinity with Creacy Hadnot for two years before the first trip to Oklahoma and was still living in that vicinity when Creacy, with the children, went to Oklahoma the last time; that witness lived in that vicinity about nine years; that during this time, and while Green Hadnot was living there, he was not able to do anything on account of having been injured in a railroad wreck; that Creacy Hadnot, in her letters to Green Hadnot, never tried to get him to come back to Beaumont; that Green Hadnot's letters sometimes stated

that he was doing a little something, and that when he was able he would do just as much as he could do; that after Creacy Hadnot came back to Beaumont the first time, she ran a boarding house and her son and daughter helped her, as well as her stepson, Sebron Hadnot.

At this point appellants rested.

D. J. Hicks, appellee, testified in his own behalf, substantially as follows: That. he was the defendant in this case, and that he bought the property in controversy from ·Creacy Hadnot on December 24, 1909, and paid $650 for it; that Creacy told witness that her husband was somewhere in Oklahoma, but that she did not know where, nor his address; that her husband had been gone five or six years; that Creacy told witness that her husband had gone, and that she did not think he would ever come back, and that she was running her own affairs and transacting her own business, and knew nothing about her husband; that Creacy stated that her husband had abandoned her for good, and that she never expected to see him any more, and that he would never come back; that Creacy told witness that her husband had gone away and left the property, and that it was her property, and that she had full rights; that she made these statements several times in her own home, and then when she came to· Judge Broughton's office she made the same statements, in witness' presence; that Judge Broughton was attorney for witness, and was examining the papers, and that he had her come down to the office, and questioned her with reference to them; that two or three other negroes came down with Creacy, one of whom was named Jacobs, and that Jacobs seemed to be acting as the agent and trying to sell the property for Creacy; that Creacy Hadnot solicited a deal with witness through her agent, and then witness went to see ·Creacy in person; that Creacy made several statements to witness when he went to see her; that she gave her signature to the deed in Judge Broughton's office; that the negotiations for the purchase of the property extended over thirty or forty days; that Creacy stated to witness during the. negotiations that she was providing for herself and children; that witness could not remember the names of all the witnesses that Creacy Hadnot brought to Judge Broughton's office with her; that Jacobs ·verified Creacy's statements made in Judge Broughton's office; that Jacobs said, in Creacy's presence, that Green Hadnot had abandoned her, and that all of the witnesses agreed as to the length of time that Green Hadnot .had been gone; that all of the witnesses and Creacy's statements agreed; that they all said that Green had gone to Oklahoma, but they did not know his address; that witness never saw Green Hadnot, nor did he nor any other Hadnot ever make any demand on wit-

ness for this place until this suit was filed. On cross-examination he testified: That witness found out from Creacy Hadnot that she had not been divorced; that they told witness that Green Hadnot had been gone about five or six years; that witness understood from Creacy Hadnot that the property in controversy was her home. Redirect examination: That Creacy Hadnot told witness she had been living upon, managing, and controlling the property ever since her husband left her; that witness requested Judge Broughton, his lawyer, to pass upon the transaction for witness; that after talking with Creacy and her witnesses, Judge Broughton advised witness that in his opinion her deed would pass title.

John Broughton, witness for defendant, testified, substantially, as follows: That witness was the senior member of the law firm of Broughton & Smith; that he remembered the circumstances about Mr. Hicks buying the property in controversy; that witness had an abstract of title to the same, and had charge of the transaction; that Mr. Hicks came to witness' office in the fall of 1909 and wanted to have the title to the property examined; that in the examination of the title, witness ascertained that it became vested in Green Hadnot, and therefore explained to Mr. Hicks that Hadnot would have to join in the deed; that witness did not know where Hadnot was, but thought he learned afterwards where he was; that witness thought that Mr. Hicks stated to witness that Green Hadnot had left the country and gone to the state of Oklahoma; that witness was of the impression that he stated to Hicks that it might be that Green Hadnot had abandoned Creacy Hadnot, and that she might be able to make a title to the property; that thereupon Hicks explained to witness that this was a fact, and witness thereupon explained to Hicks that he should be careful about it, and be sure for himself whether or not the question of abandonment was a fact, that witnesses showing the question of abandonment were brought to the office, either upon the suggestion of the witness or that of Mr. Hicks; that Creacy Hadnot herself and two women and the man Jacobs came to the office for this purpose; that these witnesses verified the statements that Creacy Hadnot herself had made with reference to having been abandoned by Green Hadnot; that witness examined Creacy Hadnot with reference to those statements, and she said to witness that Green Hadnot had run away and gone to Oklahoma, and that he had been gone for a number of years; that witness explained to Mr. Hicks that if these facts were true, it was witness' opinion that Creacy Hadnot could make title to the property; that witness questioned these parties, who were with Creacy, and who verified her statements regarding her abandonment; that these nego-

tiations extended for some time, and that afterwards witness ascertained that Mr. Hicks had, in fact, bought the property; that witness did not remember whether he prepared the deed or not, but was inclined to think he did not; that witness did advise Hicks that it was his (witness') opinion that under the circumstances as related to witness, the title would be good; that witness was of the impression that Creacy Hadnot stated, during these negotiations, that she was making her own living, and that she had not heard from Green Hadnot since he had gone away; and that she had continued living on the property, and controlling and managing same. Cross-examination: That it was the recollection of witness that his negotiations with Creacy Hadnot were confined solely to her visits to his office, and that, together with the witnesses Creacy brought there for the purpose of proving the abandonment by her husband, witness concluded from statements that were made to him by Creacy Hadnot and her witnesses that Creacy could make a title to the property, and, acting on such conclusions, he so advised Mr. Hicks.

Henry Hadnot, witness on behalf of defendant, testified, substantially: That witness had been living in this country about twenty-five years, and knew Green Hadnot during his lifetime, and also Creacy Hadnot; that when Green Hadnot left here, he and witness were on the best of terms, and in fact almost like brothers; that witness at one time worked for Green Hadnot as manager of a saloon; that witness was of the impression that it was between ten, eleven or twelve years that Green Hadnot had left here; that Green Hadnot, before leaving Beaumont, talked to witness about going away, and told witness that he was going to the Territory, saying that it was a mighty good place to go, and that witness was too smart a man to stay in this country, and that he wanted witness to go up there, where he could make a man out of witness; that Green Hadnot told witness that he would never come back to this country; that Green Hadnot never did, in fact, come back; that Green tried very hard to get witness to leave this country, and witness at one time started to go with Green; that witness could not remember whether Green's family went with him or not at the time he left; that witness never missed Creacy Hadnot; that witness visited Creacy after Green was gone; that he never missed her; that witness did not remember whether she went with Green, but that he simply did not miss her; that Creacy was a hard-working woman for herself and children; that Creacy was living on the property in controversy at the time Green Hadnot went away to Oklahoma; that witness thinks it was five or six years after Green left that Creacy left here; that all during that time Creacy was living on the

property in controversy, making a living for herself and children; that Creacy washed, ironed and did first one thing and then another; that at one time Creacy requested witness to sell a cash register for her, which Green Hadnot had gone off and left, and tried to get $35 for it; that this was about a year or two, or maybe three years, after Green left. Cross-examination: That witness was in no way related to Green Hadnot; that witness has known Creacy Hadnot for years; that up to the time Creacy Hadnot left here to go to Oklahoma, witness visited the place frequently; that witness did not know that Creacy had sold the place until she had gone; that witness had never heard about the case until this week of the trial; that witness did not know anything about Creacy Hadnot going with her husband to Oklahoma in 1904, and staying there awhile; that witness had just recently heard that; that in fact witness was in Galveston at such time that witness found Creacy gone when he came back; that witness could not say for sure whether anybody went with Green Hadnot at the time he left Beaumont in 1904; that witness knew that Green Hadnot had had an accident on a railroad.

J. H. Durden, witness for defendant testified, substantially: That witness was forty-eight years old, and engaged in the grocer business in Beaumont for fourteen years; that he knew Green Hadnot and knew him when he left here, and sold him groceries; that Green Hadnot lived about three blocks from witness' store; that Green Hadnot left about 1903 or 1904; that witness could not say where he went; that witness could not say why Green Hadnot left here or whether he went to Oklahoma; that Green Hadnot talked to witness about Oklahoma and other foreign countries several times; that witness and Green Hadnot sometimes discussed whether they would go somewhere and acquire some land; that it was witness' understanding that Green Hadnot left his wife in Beaumont when he left, but witness was not sure; that it was understood among the colored people in the neighborhood that Green Hadnot had gone and left and abandoned his wife; that that is what witness heard; that Creacy was living on the homestead and witness understood that she was making the living; that witness could not be certain whether or not Creacy went with Green when Green first went away.

Another witness, Aaron Bullock, testified, substantially that he knew Green Hadnot and used to be in the saloon business with him, and that Green Hadnot left about 1903 or 1904, and that it was witness' recollection that Green Hadnot stated that he was going up to the Indian Territory to look after a land claim for his wife.

Prior to the trial in the court below, defendant took ex parte the deposition of the plaintiff, Creacy Hadnot, and in this deposition Creacy Hadnot, on the point of abandonment, testified, substantially: That Green Hadnot died in Oklahoma on September 26, 1913, and that witness was with him when he died; that her husband had never left her; that witness went with her husband to Oklahoma in the summer of 1904, and stayed there about four months; that Green Hadnot had been in Oklahoma about five years at the time of the sale of this land by witness; that immediately upon the sale, witness left for Oklahoma, and reached her husband the following evening; that when witness sold the property to Hicks, she did not tell him that her husband had abandoned or deserted her, but stated to him that her husband was in the state of Oklahoma; that witness did not tell Hicks that she intended to sell the place, and then go to her husband, because witness did not think it best for him to know that; that witness told Judge Broughton that her husband had written her several times, and was asked by Broughton whether she was going to him, and witness said no, because she did not think he ought to know; that witness intended to go to him, as soon as she sold the place; that witness did not tell any one that her husband had nothing to do with the place or with keeping it up, or with its management or control.

Lou Turner, witness for plaintiff, testified, substantially: That witness was acquainted with Creacy Hadnot and Green Hadnot; that Green Hadnot went to the Indian Territory, and that his wife and the girl, Bessie, went with him; that witness could not say when that was, but it was some time after the Galveston storm; that witness lived about 10 or 12 blocks from the Hadnots; that a while before Green Hadnot left Beaumont, he had been sick with fevers, and his leg had been broken; that after Creacy Hadnot had gone with Green to Oklahoma one of the children got sick, and witness wrote to Creacy to come back; that Creacy had been in Oklahoma about four or five months at the time; that witness had never heard of Green Hadnot being in Beaumont since he first left; that Green Hadnot and his wife went to Oklahoma to look after some land, according to witness' understanding; that after Creacy Hadnot came back to Beaumont the first time, she and her husband were in communication by correspondence; that Green wrote to his wife, and witness saw the letter, and her husband read the letter, because there was some message in it for witness' husband; that witness had heard Creacy Hadnot say, after returning to Beaumont, that she intended to go back to her husband in Oklahoma; that witness was unable to say what was in the letters passing between the parties, because she was unable to read; that witness had never heard that Green Hadnot ran off from Beaumont with another woman.

J. W. Brown, witness for plaintiff, testified, substantially: That witness was acquainted with Creacy and Green Hadnot, who were

husband and wife; that Green left Beaumont in the year 1904, and that Creacy went with him; that after about four months Creacy came back to Beaumont; that witness saw her frequently thereafter; that Creacy lived on the homestead after she came back, and ran a boarding and rooming house; that it was the understanding of witness that when Green and Creacy first left Beaumont they went to the Territory to see about some land; that after Creacy came back from Oklahoma for the first time witness read several letters from Green to her; that such letters were just the kind of letters a man would write to his wife, telling her of his health and condition, and asking her about the children, etc.; that in 1909 Creacy Hadnot left Beaumont and went back to her husband in Oklahoma.

Relative to the court's finding of fact, to the effect that at the time the property in controversy was sold by Creacy Hadnot, she and the children were in necessitous circumstances, and that such property was sold for that reason, the evidence was as follows:

The plaintiff, Creacy Hadnot, as a witness on the stand, testified: That after Green Hadnot left Beaumont in 1904, and up to the time that witness sold the property in controversy to Hicks, she managed and controlled the property in controversy and made a living for herself and children, with the aid of the oldest son, by taking boarders and roomers; that at the time of the sale, Green Hadnot had been living in Oklahoma five years; that witness had been making a living all right for herself and children; that witness could not remember that she ever stated to Mr. Broughton or Mr. Hicks that she had to sell the place to help out herself and children; that the money she got for the property she spent around the home for herself and children to live on, for such things as she needed; that the property sold to Mr. Hicks was all the property owned by witness and her husband; that at the time this property was sold, the condition of Green Hadnot was such that he was unable to make a living or to do any work of any character; that Green was willing, but was unable to do anything for witness and the children; that at the time witness sold the property to Hicks, she was making a living for herself and children out of roomers and boarders, and that at the time of the sale, neither the witness nor the children needed any clothes or money; that the reason she sold the place was that she wanted to go to her husband in Oklahoma; that before she sold the place to Hicks, witness' eyes had been good and she could see how to work, but that at the time of the sale, they were getting bad, and that witness could not see how to cook for the boarders; that witness did not tell anybody that she had to sell the place to get something to live on, and that, in fact, she did not have to sell the place to get some-

thing to live on; that the stepson, Sebron Hadnot, was nearly a man, and was able to help witness.

In her ex parte deposition, Creasy Hadnot, on this point, testified, substantially: That at the time witness sold the place, her husband was living in the state of Oklahoma, and had been for about five years. That at the time the place was sold to Mr. Hicks, witness did not intend ever to sue him to get it back. That witness used the cash money that was paid by Mr. Hicks at the time of the sale to take care of herself and children. That witness could not remember whether she told Mr. Hicks at the time of the sale that her husband had left her without means of support, and at another point in this deposition she stated:

"I told him (meaning Hicks) that I wanted to sell the place as I did not have anything else to live on. I did not tell him that I intended to sell the place and go to my husband, because I didn't think it best for him to know that."

That at the time witness was trying to sell the place, she had pretty good eyes, and that when Mr. Hicks finally came to buy the place, witness' eyes were pretty bad, and she could not see to cook for her boarders, and in this connection we quote:

"Yes, I was telling the truth at the time I made these statements. I told Mr. Broughton and Mr. Hicks that I had to make a living, and had to sell the place to get something to live on. I did not tell them that my husband had deserted me, but I did tell them that I had to make my own living, and that I had nothing to live on, and had to sell the place to get something to live on."

The record also conclusively shows that during the time between Green Hadnot's leaving Beaumont and the sale of the property to Hicks, Green Hadnot never contributed anything to the support or maintenance of his wife and children. It was shown, practically without dispute, and without any objection to such testimony, by the defendant, Hicks, while a witness on the stand, and his attorney, Broughton, that Creacy Hadnot repeatedly stated, during the negotiations for the property, that she was compelled to sell the place to get something for herself and children to live on, and it will be observed, from the portions of her ex parte deposition above quoted, that she admits making such statements to Hicks and Broughton, and she also admits, while a witness on the stand, that such statements were absolutely true. It is without controversy in the testimony that the property in controversy was the only property owned by Green Hadnot and wife, and that they had no means of support, outside of this property, and it is further shown, by the statements of Creacy Hadnot herself, that at the time of the sale of the property, her eyes had become so bad that she could not see how to work and run the house as a boarding and rooming house, and that therefore her means of support from that source had ceased.

[2] We shall not discuss, by way of argu-

ment at great length, the sufficiency of the evidence adduced before the trial judge to support the fifth and seventh findings of fact, but, having set out such testimony substantially, we conclude that the facts and circumstances adduced were sufficient to support both of such findings, or at least we cannot say that facts and circumstances before the court were not sufficient to support such findings. We understand the rule to be that where a question of fact is submitted to the court, without a jury, a finding by the court on such issue of fact is just as conclusive as would be the finding of a jury on the same issue, and that if there be any evidence found in the record in support of such finding by the trial court, such finding becomes binding on this court, although it may appear to this court that such finding is not supported by what this court may conclude is the preponderance of the evidence. The rule announced by many of the decisions of this state is that, if there be "any evidence at all," and by others, if there be "some evidence" in the record to support the trial court's finding on a question of fact, the appellate court is bound, and should not disturb such finding. Wetzel v. Simon, 26 S. W. 642; Ins. Co. v. Hill, 36 S. W. 102; Best v. Kirkendall, 107 S. W. 932; Dignowity v. Lindheim, 109 S. W. 966; Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696.

It would be absurd were this court to say that there was no evidence in the record before us in support of the court's findings here complained of, and yet that is the contention made by appellants in this connection. In so far as the seventh finding of fact is concerned, relating to the necessitous circumstances of Creacy Hadnot at the time of the sale, even this court is of the opinion that the evidence clearly preponderates in favor of the trial court's finding, and we dismiss the assignment as to this finding without further comment.

As to the finding embraced in the fifth paragraph, to the effect that Creacy Hadnot, the wife, was abandoned by her husband, Green Hadnot, and that he was living in abandonment of her at the very time of the sale, we have concluded, also, that the evidence in the record is sufficient to sustain the trial court's finding of fact on this point. In the first place, Green Hadnot's leaving his family and remaining away in another state for a period of approximately five years was a very unusual occurrence, as we think, and this was a circumstance, and pertinent one, we think, to be considered by the trial court on the question of abandonment. Again, it is shown without dispute in the record that from the time Green Hadnot left his family and property he never exercised or claimed the right to exercise one single act of ownership, management, or control over said property, nor even as much as to inquire about the taxes on the same, nor did he, according to this record, contribute, or offer to contribute, anything in support of his family left behind during his entire absence, and up to the date of the sale to appellee. There is testimony in this record, by several witnesses, who stand unimpeached, that it was the general repute among the neighbors of Creacy Hadnot that Green Hadnot, her husband, at the time he left Beaumont, ran off accompanied by another woman, and we find no objection interposed by appellants to any of this testimony, and, in the absence of objection, the trial court was authorized to consider this character of testimony in reaching the conclusion he did on this point. There was also the testimony of the witness Henry Hadnot, to the effect that at the time Green Hadnot left Beaumont, he tried to persuade said witness to go with him to Oklahoma, and stated to the witness that the Territory was a fine country, and that if witness would go with him, he would make a man out of witness, and he further stated to this witness that he never intended to return to Beaumont again. It was also shown by the witness Durden that Green Hadnot, before leaving Beaumont, on some occasions talked to the witness about the Indian Territory, and "other foreign countries," and that it was the intention of Green Hadnot to leave Beaumont and go to some of these places. It is true that Creacy Hadnot, one of the plaintiffs, has testified that when Green Hadnot left Beaumont, she accompanied him, and that he did not go off with another woman, and there is also testimony in the record to the effect that during the absence of Green Hadnot, and before the sale of the property, Creacy Hadnot received letters from him, and in fact kept up a correspondence with him, and that such letters did not indicate or suggest that it was the intention of Green Hadnot to remain in permanent abandonment of his wife and family. None of these letters, however, were produced on the trial, but it was testified by one of the plaintiffs, Bessie Hadnot, that the letters were destroyed by her. These matters were for the consideration of the trial judge, and it was his province to believe or disbelieve this testimony, as he might see proper, and it is not for this court to disregard the trial court's judgment and action, if he concluded to disregard this character of testimony.

[3] It must be borne in mind that much of the testimony relied on by appellants, as showing nonabandonment, came from plaintiffs themselves, or some of them, and it must be concluded that there are contradictions in the evidence of the plaintiff Creacy Hadnot in several material particulars, as shown in the statement above; and, under such circumstances, it is the rule in this state, well established, that the trial court is not bound to give effect to the testimony of

an interested party, but may disregard it in toto, or may accept as true such portions thereof as he may please, and disregard other portions. Under this rule, the trial court was authorized to disbelieve and disregard in toto the testimony of the plaintiffs Creacy Hadnot and Bessie Hadnot as being vitally interested parties to this suit, and as to the testimony of the witnesses Willie Adams, regarding letters received from Green Hadnot, and of Lou Turner and the witness Brown on the same point, the trial court had the right to weigh this testimony as against all other facts and circumstances in the case in reaching his conclusion on this point, and it is to be presumed that he did so when arriving at his conclusion.

Another significant fact, we think, in support of the contention of abandonment, is that Green Hadnot lived several years in the state of Oklahoma after the sale of this property by his wife, and the record shows, without dispute, that during such period of time between the sale and his death, he never at any time set up any claim of any character to the property, but, on the contrary, the record would imply the acquiescence on his part in the sale. It is true that Creacy Hadnot testified that when she reached Oklahoma, after selling the property, she told her husband what she had done, and that "he did not like it." It is but reasonable to suppose that if Green Hadnot, at that time, on being apprised of the sale of the property, felt that his wife's act was unauthorized, he would have made some claim of some character to the property during his lifetime, especially in view of the fact, as disclosed by this record, that he and the family were without means of support, and that he was physically unable to work and support his family. We think it is more reasonable to conclude, and that the trial court was authorized to conclude from this circumstance, that Green Hadnot himself realized that his wife was authorized to convey and pass title to this property, in view of his abandonment of her, at the time of the sale.

On the point that the trial court was authorized to disregard in toto evidence of Creacy and Bessie Hadnot, as vitally interested parties in this cause, see Railway Co. v. Runnels, 92 Tex. 305, 47 S. W. 971; Railway Co. v. Johnson, 23 Tex. Civ. App. 160, 55 S. W. 791; Rice Co. v. Fairbanks, 45 Tex. Civ. App. 383, 100 S. W. 959; Jackson v. Ins. Co., 138 S. W. 1137.

In conclusion, we say that the record in this case is such that we do not feel authorized to disturb the finding of the trial court on the question of abandonment, and we overrule the assignment of error, challenging that finding of the trial court, as well as the assignment relating to the seventh finding, to the effect that there was a necessity for the sale of the property.

[4] The finding of the trial court in the eighth paragraph of his findings, to the effect that appellee paid the purchase price of the property, to wit, $650, which included the $325 paid in cash and the note for $325, evidencing the balance, is challenged on the ground that the same is not supported by the evidence. The facts in this connection are substantially as follows: At the time of the purchase of the property by Hicks, he paid Creacy Hadnot $325 cash, and executed his note for $325 for the balance, the note reciting the retention of the vendor's lien, and also the deed reciting such lien. At the time this note became due, Creacy Hadnot had left Beaumont and gone to the Indian Territory, and in the meantime Hicks had discovered that there were some taxes payable on the property, and which had accrued at the time of the sale to him. The deed from Creacy Hadnot to Hicks contained a clause of general warranty, and upon discovering the fact that taxes were due on the property, Hicks did not promptly pay the note when presented, but held the matter up to ascertain the correct amount of taxes, and, after ascertaining the amount of taxes due on the property, and that had accrued at the time of the sale, he paid to Creacy Hadnot the full amount due on the note, including principal and interest, less the amount that had been found to be due as taxes on the property, and this amount due on the note, less the amount of taxes, was sent by Hicks to Creacy Hadnot at Muscogee, Okl., and was received by her, and the proof shows that the same was used and spent by her for necessaries in the support of the family, and the record discloses no contention whatever at the time of the receipt of this balance of the purchase money; that the same was not in full payment of the note, but the circumstances would indicate that the money so received was accepted in full payment of the purchase money for this property, and in full settlement and discharge of the note, and was used by the family without complaint or question, and was used with full knowledge of the facts by Creacy Hadnot, without complaint or question. Under such circumstances, we think true the trial court's finding in this respect that the note for the deferred purchase money was paid, as contracted, and that, if not technically so in point of law nevertheless it was so accepted and considered by the parties to the transaction. We, therefore, sustain the trial court's finding of fact on this point, and overrule the assignment of error challenging the same.

[5-7] There is an assignment in the record, to the effect that the trial court's judgment cannot be supported, for the reason that there is no proper pleading on the part of appellee as a basis for the same, this assignment being first in the brief, and the proposition urged thereunder is to the effect that, appellee having pleaded his title specially as coming from the plaintiff Creacy Hadnot,

a married woman, he waived his formal plea of "not guilty," and should be held strictly to the proof of his title, as specially pleaded, and that not having affirmatively alleged that it was necessary for Creacy Hadnot to sell the property for the support of herself and children no proof could be admitted in support of that fact, even though Green Hadnot had abandoned and was living in abandonment of his wife at the time of the sale, and that therefore the sale cannot be upheld on the theory of abandonment and necessity for the sale. In answer to this contention we say that the first paragraph of the special answer of appellee, as above set out, contains the allegation that the deed from Creacy Hadnot to appellee was duly executed by her, and, in effect that the same passed the title to the property in controversy to appellee, Hicks. It was not affirmatively stated in this paragraph of the answer, in so many words, that it was necessary to sell the property, but, in our opinion, the allegation that the deed was duly executed by her would be sufficient, in the absence of proper exceptions to such pleading, to admit proof of the fact that a necessity existed for the sale. We find in the record exceptions interposed to this paragraph of the answer, on the ground that the same stated only the conclusion of the pleader, but we find nowhere in the record that the action of the trial judge was invoked on these exceptions, or that his attention was even called to them, and in the absence of such showing, and in the absence of any bill of exceptions challenging the ruling of the court in that regard, it must be presumed, under the rules, that such exceptions were waived, and we so treat them. We, therefore, conclude that the allegation that the deed was duly executed by Creacy Hadnot, although it may be the conclusion of the pleader, and we think was, yet, in the absence of proper exceptions thereto on that ground, and the overruling of same, duly excepted to, the pleading was sufficient, and evidence was admissible thereunder, showing the necessity for the sale, and such pleading would afford a basis for the court's judgment.

The authorities cited by appellants under this assignment are not decisive of this question and it would serve no useful purpose in discussing them. We are well aware of the rule as most of these authorities announce, that where a defendant in an action of trespass to try title follows up a formal plea of "not guilty" by specially pleading his title, then the defendant will not be permitted to show any title other than the title specially pleaded. This is a well-settled rule in this state, and we are not to be understood as holding anything to the contrary herein, but we simply hold that this rule is not applicable to the contention here, and the assignment raising this point is overruled.

[8-10] There is an assignment of error,

198 S.W.—24

being No. 7, challenging the action of the court in permitting the witness Bohrer to testify that in 1906 or about that time Creacy Hadnot tried to sell to him the property in controversy and represented to him that she did not know where her husband was, and that she was in needy circumstances, the ground of objection being that said testimony was irrelevant to the issue and immaterial, and if such declarations were made to him by Creacy Hadnot, they were not binding upon Green Hadnot nor upon his heirs, who are plaintiffs, and because they were not made in the presence and hearing of appellee, and that appellee, therefore, could not have been influenced by such representations. There was an issue of estoppel interposed as against any interest asserted by Creacy Hadnot herself, and the testimony, we think, was admissible upon that issue, and we also think that the testimony became material as bearing upon the credibility of Creacy Hadnot, who was a witness in the case, but we have some doubt as to the admissibility of this testimony for the purpose of being binding on the other plaintiffs in the case, on the main issue as to them, but if the action of the court in admitting this testimony was error, it was not one for which this court would be authorized to reverse the judgment, for the reason that the record in this case shows that exactly the same and similar statements and declarations were made by Creacy Hadnot, repeatedly, to other witnesses in the case, and who testified to such declarations, without objections interposed by appellants, and the only objection made by appellants to any testimony of this character was to that of the witness Bohrer, here complained of. Under such circumstances, this court, under the rules, would not be authorized to reverse the trial court's judgment for the error in admitting Bohrer's testimony on this point, if such action was error. This rule is so well understood that citation of authority is unnecessary.

[11] Now, the trial court having found as a fact that at the date of the execution of the deed by Creacy Hadnot to appellee, conveying the property in question, Green Hadnot, her husband, had abandoned and was then living in abandonment of his wife and family, and also having found that Creacy Hadnot and children were in necessitous circumstances, and that the property was sold for that reason, and the state of the evidence being such, in our judgment, as to warrant such findings of fact by the trial court, we hold that the deed from Creacy Hadnot to appellee, D. J. Hicks, executed under such circumstances, had the effect, in law, to pass the title to the property in controversy to appellee, and that the judgment of the trial court in so holding was correct.

There are other interesting and nice ques-

tions discussed in the briefs of counsel, but we think it is unnecessary for us to enter into a discussion of them, in view of the conclusions we have reached, and we, therefore, pretermit any such discussion. The briefs in this case reflect much credit on counsel for both sides, and show a most thorough and painstaking investigation of authorities, etc., but the vital questions as we see them are: First, was there an abandonment of the wife by the husband at the time of the execution of the deed; and second, was there a necessity for the sale of the property? Both of these issues having been determined in favor of appellee, the law must follow that judgment was correctly rendered in his favor for all the property in controversy.

We think that what we have said above renders unnecessary the discussion of any other assignments of error found in appellants' brief, for the effect of what we have said is to overrule them.

Finding no reversible error in the judgment of the trial court, the same is affirmed.

---

⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes