**JONES' UNKNOWN HEIRS et al. v. DORCHESTER et al. (No. 1657.)**

(Court of Civil Appeals of Texas. Amarillo. June 23, 1920. Rehearing Denied Oct. 13, 1920.)

**1. Wills ⚷441—Language construed in connection with testator's surroundings.**

The intention of testator should be ascertained not merely from the language of the will itself, but from such language in connection with testator's situation and surroundings.

**2. Wills ⚷457—Technical words presumed to have been used in settled legal meaning.**

Technical words are presumed to have been used in their settled legal meaning unless the contrary is manifest.

**3. Wills ⚷472—Subsequent clause deemed to affirm prior clause if such construction is possible.**

A subsequent clause in a will must be deemed to affirm, not to contradict, an earlier clause, if such construction can clearly be given.

**4. Wills ⚷471—Various clauses to be reconciled, if possible.**

A will is not to be read so as to contradict itself if its apparent contradictions can be reconciled by bringing the various clauses together and deducing a consistent interpretation from the whole context.

**5. Wills ⚷602, 603(3)—Will construed to vest conditional fee.**

Where will devised land by granting and habendum clauses sufficient, without qualifying language, to vest a fee under Vernon's Sayles' Ann. Civ. St. 1914, art. 3235, but preceding such granting and habendum clauses stated that estate was devised "subject to the conditions hereinafter shown," and in subsequent portions of will provided that no portion of the estate should vest absolutely in devisee until he reached a certain age, at which time specified sum should be given him, and that remainder should not be delivered to him in his absolute right until he reached specified age, or in discretion of executors until he reached a specified age, and provided further for use of estate by executors for charitable purposes upon devisee's death without issue before estate "shall have passed to and become absolute in him," it did not vest absolute fee in devisee at time of testator's death, but vested the estate in devisee in fee upon the conditions named, one of which was that he should live to a specified age before being given specified portion of estate, and that on his death without issue before reaching specified age the estate should vest in executors.

**6. Charities ⚷37—Testamentary trust not defeated by inability to maintain as costly a hospital as contemplated.**

Testamentary trust created for erection and maintenance of hospital for care of poor as memorial for testator did not fail merely because the estate was not as big as had been supposed by testator and was not sufficient for erection and maintenance of as costly a hospital as testator had contemplated, where it was sufficient for the erection and maintenance of a hospital on a smaller scale for the care of poor.

**7. Wills ⚷82, 104—Improbability of gift does not defeat it; language must be meaningless to defeat gift on ground of uncertainty.**

*To avoid a will or any of its provisions for* uncertainty, it is not enough that the disposition appears too obscure and irrational for the testator to have been likely to intend it, but the gift must be without clear meaning at all; and the improbability of such a gift on general principle, shall not defeat it.

**8. Charities ⚷23—Charitable trust not void as too indefinite to be administered.**

Where the purpose of a charitable trust is distinctly declared, and trustees are appointed by the will to carry out the intent of the testator, and the beneficiary may be ascertained, it is not void on the ground of being too indefinite and uncertain to be administered by a court of equity.

**9. Evidence ⚷129(1)—Cost of other hospitals admissible on issue of validity of trust for hospital.**

In action involving validity of trust created by will for erection and maintenance of hospital as against contention that the estate was not sufficient for the maintenance and erection of such hospital, testimony as to the cost of other hospitals in other cities *held* admissible on the question of the expense of equipment and maintenance of hospitals.

**10. Charities ⚷11—Testamentary trust for hospital not defeated by existence of other hospitals.**

Testamentary trust created for the erection and maintenance of hospital for the poor in certain city was not defeated by the fact that at the time of the execution of the will there were no hospitals in such city and the existence of two such hospitals at time trust was sought to be enforced.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Suit by C. B. Dorchester and others against Wilson N. Jones' unknown heirs and others. From judgment rendered, the defendants appeal. Affirmed.

C. H. Elting, of Durant, Okl., and Wolfe & Freeman, of Sherman, for appellant January.

Jordan & Burke, of Hugo, Okl., and Randell & Randell, of Sherman, for appellants Griggs, Le Flore, Hampton, and Sophie Jones.

J. F. McMurray, of McAllester, Okl., Wood, Jones & Hassell, of Sherman, and Crane & Crane, of Dallas, for appellants J. P. Jones and Mrs. A. M. Jones.

McReynolds & Hay, of Sherman, for interveners Edward Slaton, Lizzie Slaton, Kennedy, Roe and wife, and Paris and wife.

Head, Dillard, Smith, Maxey & Head, of Sherman, for appellees Dorchester, Davis, and Strother.

HALL, J. On the 1st day of December, 1917, C. B. Dorchester, Tom Randolph, J. G. Davis, and J. B. Strother brought this suit in the district court of Grayson county, complaining of the unknown heirs of Wilson N. Jones, deceased, the unknown heirs of Nat Jones, deceased, Mrs. A. N. Jones and her husband, J. P. Jones, Callie Marguerite Jones, a minor, alleging in substance that about the 13th day of September, 1900, Wilson N. Jones, being a citizen of the Choctaw Nation, in the then Indian Territory, and a resident of Grayson county, Tex., made his last will and testament, a copy of which is attached to the petition, that about the 11th day of June, 1901, the said Wilson N. Jones departed this life, and that his will was in September thereafter duly probated in the county court of Grayson county. Tom Randolph, C. B. Dorchester, D. E. Bryant, Tom L. Griggs, and F. C. Dillard were appointed independent executors of the will. Griggs and Dillard declined to qualify. Bryant had died before the institution of the suit, but Randolph and Dorchester continued to act as independent executors. Among others the will contained the following paragraphs:

"Seventh. As herein indicated and in the manner indicated, I give, devise and bequeath, subject to the conditions hereinafter shown, and subject to the bequests and provisions above set forth, unto my grandson, Nat Jones, all of the property of which I may die possessed, and to which I may be entitled and in which I may have an interest at the time of my death, real, personal or mixed, whether the same is situated in the Indian Territory, in the state of Texas, or elsewhere, and whether the same shall be separate or community.

"To have and to hold unto him, the said Nat Jones, in his own absolute right, title, claim and interest forever, and my executors hereinafter named, in so far as any guardianship of the estate herein devised and bequeathed may be necessary, shall be and are hereby appointed guardians of the estate of my said grandson Nat Jones, and no bonds shall be required of them or either of them as such guardians, and no court shall have jurisdiction of them or either of them as such. No part of the estate shall be delivered to my grandson, Nat Jones, except moneys for personal expenses as above provided for, or to the guardian of his person, or vest absolutely in my said grandson, until he shall become twenty-one years of age, at which time there shall be delivered to him in his own absolute right, title and interest, the further sum of $10,000.00. He shall receive nothing further from my estate until he shall become twenty-four years of age, at which time there shall be delivered to him in his own absolute right, title and interest the further sum of $25,000.00. He shall receive nothing further from my estate until he shall become thirty years of age, when the residue of my estate shall be delivered to him, provided, however, that such residue may be delivered to him at any time after he shall become twenty-four years of age if all of my executors then administering my estate shall concur in the opinion that it is wise to deliver it to him and shall so deliver it.

"Eighth. If my said grandson shall marry and shall die, leaving issue surviving him, then I will and provide that all of my estate which shall not have been delivered to him in accordance with the seventh paragraph of this will, shall go in absolute fee simple title to such issue.

"Ninth. If my grandson shall die without leaving legitimate issue surviving him, before my estate shall have passed to and become absolute in him, subject to the bequests and provisions contained in the first, second, fourth, and fifth paragraphs of this will, I will provide as follows: (1) All and entire my estate and property which shall not so have passed to and become absolute in my grandson shall be a trust fund for the establishment and maintenance of a hospital in the city of Sherman, Grayson county, state of Texas, to be known as the Wilson N. Jones Hospital, and I hereby will and provide that said estate and property shall pass to and vest in Tom Randolph, C. B. Dorchester, D. E. Bryant, J. H. Strother and J. G. Davis, of Sherman, Grayson county, Texas, and Tom Griggs of the Choctaw Nation, in the Indian Territory, and to the survivors of them who may be living at the time the trust becomes effective as trustees of said fund, and to them or said survivors of them, such estate and property is devised and bequeathed. (2) Said hospital as aforesaid shall be established in Sherman, Grayson county, Texas, and be named as aforesaid. It shall be a hospital established and maintained for the benefit of the city of Sherman and its citizens and in which the sick and wounded of Sherman shall receive surgical and medical aid and attention and proper food, care and nursing, but to said hospital may also be admitted the sick and wounded from other parts of Texas and the Indian Territory. Such sick and wounded as may be admitted to said hospital, as may be indigent, which is to be determined by the managing board of the hospital, shall receive the attention and care of the same and without charge. Where persons who are not indigent or admitted to said hospital at such charges as are just and proper, to be determined by the managing board, may be made but they shall be only such as are reasonable. The object of this devise and bequest and establishment of this trust being as aforesaid to establish a hospital primarily for the benefit of the citizens of Sherman, Grayson county, Texas, and secondarily for all such others of the Indian Territory and the state of Texas who are sick and wounded, who shall be indigent, as determined by the managing board of such hospital, and who are received into it, may receive the care and attention of the same without cost and that all said sick and wounded, even though

not indigent, may receive the care and attention of the hospital at a reasonable cost. (3) So much of such hospital fund as to the trustees may determine upon, or the corporation which may succeed them, as hereinafter provided for, shall be used in the purchase of a lot and in the purchase of a building thereon, or in the erection of a building thereon. The remainder of the sum shall be devoted to the maintenance of the hospital. (4) I will and provide that the trustees above named who shall be surviving at the time this trust becomes effective shall be the managing board of said hospital fund, and said hospital, but I further will and provide that if they shall at that time be less than five in number, they shall elect a sufficient number of trustees to raise the number to five; and further will and provide that as the number of the trustees shall become less than five that the remaining trustees shall from time to time elect a sufficient number to keep the number always at five until a corporation shall be formed which shall succeed the said trustees in managing said hospital if said corporation shall be formed, as hereinafter provided for, in which event the directors or trustees of said corporation having charge of said hospital shall be five or more. (5) I suggest and would request that if it be found practicable that as soon as found expedient after this trust becomes effective, and my suggestion would be within two years, that the trustees shall form themselves into a body corporate, under the laws of the state of Texas, for the purpose of carrying out the provisions of this trust and maintaining said hospital as aforesaid and after the formation of such body corporate such trustees shall assign, transfer and convey to it all the estate and trust fund held by them and such body corporate shall succeed to and become the successor of such trustees and it and its directors shall be the owners and managing board of such hospital fund. The salaries to be paid and the details of the management, control and detail to best effectuate and carry out the terms of the trust."

It was further alleged that at the date of his death Wilson N. Jones had no children and no grandchildren save a grandson, Nat Jones; that he was survived by his second wife, Eliza Belle Jones, the stepgrandmother of Nat Jones; that by his will he undertook to convey all of the property owned by himself and his wife Eliza Belle Jones; that she had previously agreed to such disposition of her interest in the community estate; she had agreed to take under the will the interest bequeathed to her; that after the death of the testator she repented that she had made this agreement, and, instead of accepting under the will, claimed her interest in the property, which seems to have been conceded to be practically one-half under the community law of the Choctaw Nation, which it was alleged was similar to that of Texas; that Nat Jones died when he was about 29 years of age, leaving no lawful descendants, and no brothers or sisters, but leaving his mother as sole heir; that at the date of the execution of the will there was no hospital in the city of Sherman, but since making of the will and the death of the testator there has been established in the city of Sherman two hospitals, in which the sick and wounded of Texas and Oklahoma are admitted for reasonable charges and in which the indigent poor are treated without charge; that the funds on hand belonging to said estate amounted to about $110,000, from which the costs of administration and cost of litigation must be deducted; that this fund, if put at interest would provide a fund by which many more people who are indigent would be treated at one or both of these hospitals or any other hospital that might be established in the city of Sherman, or that the stock in some other hospital may be thereafter purchased, or that a building may be erected near one of them, and the primary purpose of said Wilson N. Jones expressed in his will might be accomplished; that the erection of these hospitals first mentioned rendered it unnecessary at this time to erect another hospital, and that the amount of the money on hand would not permit the erection of a building suitable for the carrying on of the hospital and at the same time furnish funds for caring for the indigent that may be admitted into it; that this could only be accomplished by holding the funds which are now on hand and keeping them at interest so as to accumulate a large sum; that the primary purpose and intention of the said Wilson N. Jones as shown in said will, may be carried out in one of the following manners:

First. Establish a fund to be known as the Wilson N. Jones fund handled by trustees or a corporation as in the will provided, the income of which shall be devoted to caring for and securing medical, surgical, and nursing aid for the poor and indigent mentioned in said will in one of the hospitals now established or hereafter to be established in Sherman and to aid any such hospitals to better carry on their charitable work.

Second. To erect and furnish one or more buildings which shall be established in connection with any hospital or hospitals now or hereafter to be established in the city of Sherman, for caring for therein the sick and wounded referred to in said will, at reasonable cost for all and without charge to any who are worthy and indigent, which may be determined by the trustees or directors of said fund.

Third. If it can be done at such a figure as will permit the carrying out the purposes of said Jones, as shown in said will, to purchase a hospital now erected or that may be hereafter erected in said city of Sherman, or stock therein, and to this end it may be necessary to permit the accumulation of a greater fund in the hands of the trustees.

The prayer is that the court decree how such fund should be handled and in what way disposed of, invested or managed for carrying out the purposes of the said Wilson N. Jones, as expressed in his will, and for general and special relief.

The plaintiffs prayed that the court construe the will and for judgment as to how such fund should be handled and in what way it should be disposed of, invested, and managed for carrying out the purposes expressed in the will, and for general and special relief. The defendant Mrs. A. M. Jones, joined by her husband, J. P. Jones, answered by various demurrers and special exceptions, which raise the question that the petition shows on its face that all the estate of Wilson N. Jones had vested in Nat Jones upon the death of the testator and upon probate of the will. They further say that, if they are mistaken in that contention, the estate vested in Nat Jones when he reached the age of 21 years, or if mistaken in that, it certainly vested in him when he reached the age of 24 years. It is further alleged that, as trustees under paragraph 9 of the will, they were bequeathed nothing except such property as had not vested in Nat Jones; they were not entitled to anything; that the bequest, if any was made to the trustees, had failed, in that at the date when testator made his will he thought he was conveying thereby $300,000 worth of property, but that, when the litigation ended with his wife after his death and payments had been made to Nat Jones, the estate amounted to less than $90,000, which sum was wholly inadequate to build, equip, and maintain the kind of a hospital contemplated by testator. It was further alleged, in substance, that the dominant motive of testator was that, in the event of the death of Nat Jones, his sole descendant, there should be erected a hospital in Sherman which should be a monument to perpetuate his memory among men; that he thought that $300,000 would be sufficient for that purpose, but that $89,000, after deducting the expenses therefrom, would be wholly inadequate for that purpose, for which reason the will and intent of the testator could not be carried out by erecting such a building and maintaining it as the money on hand would enable the trustees to erect and maintain; that, inasmuch as the bequest had been made to establish a Wilson N. Jones hospital of the kind and character mentioned, such bequest was not impressed with any trust, but it became impossible to carry out the purpose of the will, and such bequest, if originally valid, had failed; and that Mrs. A. M. Jones, being next of kin, was entitled to the estate. To this answer plaintiffs filed a supplemental petition, alleging in substance, among other things, that one of the hospitals in Sherman, known as the Sherman Hospital, has a capital stock of $65,000 and an indebtedness of $22,000, which plaintiffs believe could be bought for about $89,000, but that in such event no money would be left for endowment and operating expenses, and that said Sherman Hospital had been run in such manner as to earn its expenses. The defendants, Mrs. A. M. Jones and her husband filed a supplemental answer containing various exceptions. The general demurrers and special exceptions to these various pleadings were overruled.

Frank January, with leave of the court, intervened, alleging in substance that he owns and is entitled to the possession of all the net property in the hands of the executors as residuary legatee of Mrs. Eliza Belle Aynesworth, formerly Mrs. Eliza Belle Jones, the surviving wife of the testator, Wilson N. Jones; that the testator's property consisted wholly of his interest in the community property of himself and wife, Mrs. Eliza Belle Jones; that the testator's interest in said community property, when the will was admitted to probate, was vested in the executors and was held by them during the life of Nat Jones, in trust, for whomsoever should ultimately be entitled to it under the terms of the will; that upon the death of Nat Jones before arriving at the age of 30 years the title descended to and vested in Mrs. Eliza Belle Jones, the only heir at law of Wilson N. Jones after Nat's death; that after acquiring said property the said Eliza Belle Aynesworth, formerly Eliza Belle Jones, made a will in which intervener was made residuary legatee; that thereafter she died, and said will was duly and finally probated; and that he thereby became the owner of the net property in the hands of the trustees as such residuary legatee. Intervener further alleged the failure of the trust attempted to be created by the will.

Tom Griggs, defendant, and William Le Flore, Susan Hampton, and Sophie Jones, interveners, whose interests are alleged to be identical, have filed a joint brief. Griggs and said interveners who adopted the answer of Griggs allege, in substance, that Griggs, as a nephew, was entitled to one half of the trust fund in the hands of plaintiff; and that interveners, as nieces, were entitled to the other half, being next of kin to Wilson N. Jones, that Wilson N. Jones was a citizen and resident of the Choctaw Nation, at the time of his death, and that the trust created by his will had failed.

Edward Slaton and wife, Lizzie Slaton, E. H. Kennedy, B. T. Rowe and wife, Mrs. B. T. Rowe, N. M. Paris and wife, Mrs. N. M. Paris, also filed their plea of intervention, and in this court adopt the brief filed by the trustees, praying that the judgment be affirmed. By their plea of intervention they allege, in substance, that they were resident

citizens of the city of Sherman; that they and each of them are in straitened financial circumstances and are of the class of citizens and people generally which are referred to in the ninth paragraph of the will, and as the representatives of such class of citizens and as individuals are interested in the manner in which the trust estate is established and executed; that all of them from time to time, and some of them at the time the petition in intervention was filed, were in need of medical and surgical treatment, and that on account of their financial condition they were unable to procure and receive the necessary medical and surgical treatment which their condition frequently demanded; that there were many citizens of Sherman, as well as in Grayson county, who were in like condition as themselves, and who were from time to time in need of medical and surgical treatment; that there is now an urgent need for the erection and maintenance of an institution in the city of Sherman where indigent persons may obtain and receive medical and surgical treatment when in need thereof; that a hospital could be erected for approximately $60,000 which would accommodate on an average of 60 patients, and that after the erection of said hospital there would be left approximately $50,000 as a maintenance fund; that the erection and maintenance of such a hospital would, to a certain extent, supply the demand for such an institution in Sherman, and would substantially comply with the terms and conditions of the will; that the manner of carrying out the trust estate as suggested in the original petition filed by the plaintiffs herein would not comply with the terms and conditions of the will, but the erection of a hospital as suggested by them would be in substantial compliance with its terms and conditions; and that the same was capable of being carried into effect.

Mrs. A. M. Jones, J. P. Jones, and Frank January moved to strike this plea of intervention upon the ground that interveners were neither necessary nor proper parties to the suit, and further because the surviving trustees of the will have neither declined nor refused to act in their fiduciary capacity, and were the only proper parties to represent the public and the class of individuals to which interveners allege they belong. In reply to the motion to strike out the plea in intervention, Mrs. A. M. Jones, J. P. Jones, and Frank January alleged, in substance, that they did not agree with the contention set out in plaintiff's petition wherein they allege that on account of the depletion of the fund they or such trustees would be unable to comply with the conditions of the will; that interveners would show that the terms of the will could be substantially complied with; that a hospital could be erected and equipped at a reasonable cost which would leave a substantial fund in the hands of the trustees for maintenance purposes; and that from said funds and other funds which would be contributed by the city of Sherman as a municipality, and by prudent and economic management, the hospital could be erected, equipped, and maintained in substantial compliance with the terms of the will.

The court sustained the motion to strike out the plea of intervention filed by Edward Slaton and others, and exceptions were duly taken. The case was tried upon the pleadings as above outlined, and the motion of plaintiffs for judgment was granted. The judgment was entered, decreeing that Mrs. A. M. Jones and her husband, J. P. Jones, had no interest in the estate and giving the possession of all the property to the plaintiffs for the purpose of erecting a hospital. All other claimants and interveners were denied any interest in the estate except it was provided that a compromise agreement with the minor Callie Marguerite Jones was pending for approval by the court.

We have set out above the particular items of the will which constitute the battle ground as shown by the briefs of the parties. The substance of the remaining paragraphs of the will is as follows: Paragraph No. 1 directs that the testator's debts be paid. In the second paragraph he directed that his body be buried in Sherman; that his executors purchase a monument for $3,500 with which to mark his grave, and set aside $1,000 to be invested as a trust fund, the income of which was to be used in caring for the lot where he was buried. In the third item testator expresses the wish that his wife and his grandson, Nat, should consent to be buried on the same lot. By the fourth item he gives Jacky Jones of the Choctaw Nation $150, and provides that all notes of Jacky Jones held by him at the time of his death should be surrendered to the legatee. By the fifth item he gives the residence in Sherman to his wife for life with the right in Nat Jones to also occupy it. It further directs the executors to keep the house insured and repaired and to pay all taxes. This item further provides that the executors shall pay testator's wife, during her life, $1,000 annually, and further recites:

"I here now further provide that the terms of this will are meant to apply to and to apply, not only to my separate property and my interest in the community property of myself and wife, if any there be, but that it applies to my full community property, including any interest that my wife might take in the same under law, I intending to embrace in the dispositions in this will made all property, separate or community, real, personal or mixed, which I may own and to which I may have any claim, or title, or in which I may be interested at the time of my death."

The tenth paragraph is as follows:

"Referring to the fifth paragraph of this will above shown, I provide that in case of the destruction by fire, storm or otherwise of the house on my said residence lot, that if my said wife so wishes the same shall be rebuilt by my executors out of the insurance money thereon or out of my estate, and that my wife shall have the use of said house without charge, as above provided. This provision is not intended to forbid my said executors from rebuilding said house, even if my said wife does not so request, but I here specially will and provide that my executors may dispose of any part of the property above devised or bequeathed, that they see fit to reinvest the proceeds therefrom and that from time to time they may change the investment of my estate as their judgment may dictate to be wise."

In the sixth paragraph he requested that Tom Griggs be appointed guardian of his grandson, Nat, and that the latter be given full opportunity to obtain an education, and directed that the executors pay all expenses incident thereto, and at their discretion furnish the said grandson money for his personal expenses. By the eleventh paragraph he appointed Tom Randolph, C. B. Dorchester, D. E. Bryant, and F. C. Dillard, of Grayson county, Tex., and Tom Griggs, of the Choctaw Nation, executors without bond, conferring upon such executors as should qualify the power of deciding by a majority vote any question of control which might arise.

Appellants Mrs. A. M. Jones and her husband, J. P. Jones, by their brief assigned as the first error the action of the court in overruling the general demurrer urged by them against the plaintiff's petition, insisting that under the terms of the will the property of Wilson N. Jones passed to and became absolute in Nat Jones during the lifetime of the latter, and at his death descended to the appellant Mrs. A. M. Jones, his mother and only surviving heir, at law.

We will not undertake to discuss and dispose of, in their numerical order, the 29 assignments and the several propositions following them as they are presented in the able brief filed by appellant's learned counsel; but, taking up the questions upon which they rely for a reversal of the judgment in the order of their importance, we find that the principal contention is that it is the duty of this court to interpret and construe the will of Wilson N. Jones: (1) So as to pass the greatest estate possible under the language of the will to Nat Jones, the first taker; (2) to adopt that construction which will permit the earliest vesting of the title to the estate in him; and (3) not to divest or diminish such estate unless the clause which tends to do so is couched in as clear and decisive words as the clause which granted it. It is true that the three rules urged by appellant for our guidance are sustained by the cases cited, and we find them announced in various forms by text-writers. 1 Schouler on Wills (5th Ed.) §§ 478, 562, 562a, 599; 1 Underhill on the law of Wills, §§ 358, 476; 2 Underhill on Wills, § 861. These text-writers, however, agree in declaring that the cardinal rule in the construction of wills is that the plain intent of the testator as evinced by the language of his will must prevail if that intent may be carried into effect without violating some deeper principle of public policy or of statute prohibition; that this intention is to be collected from the whole will taken together, and not from detached portions alone. As a part of this rule it is said that in interpreting a will the testator's general and controlling purpose should be regarded rather than any exalting or exciting ideas which may have dictated the terms of his will, and that the intent, as gathered from the whole will, overrides all technical rules which relate to the construction of words.

[1] In applying the rule which seeks to discover the testator's real intention, the language of the will should be taken, so far as may be, according to the testator's own situation and surroundings, because, as the courts have observed, the language of the will is not a universal interpretation, but they are equally supposed to speak the sense of the testator, and his general intent must be gathered, not merely from the language used in the will, but must be taken in connection with his personal environment.

[2] The will under consideration has expressed the intent of the testator in a great measure by the use of technical words, which under the general rule are presumed to have been used in their settled legal meaning unless the contrary is manifest; but the cases are uniform in holding that technical words are liable to other explanatory and qualifying expressions in the context which disclose the testator's actual intent; and where a different meaning is fairly deducible from the whole will the technical sense must yield to the apparent intention.

[3, 4] Another well-recognized canon of construction applicable to this case is that a latter clause in a will must be deemed to affirm, not to contradict, an earlier clause if such construction can fairly be given. In short, a will is not to be read so as to contradict itself if its apparent contradictions can be reconciled by bringing the various clauses together and deducing a consistent interpretation from the whole context. Appellants base their claims upon that part of the seventh clause where the testator gives his property to Nat Jones, emphasizing the gift by an habendum clause as follows:

"To have and to hold unto him, the said Nat Jones, in his own absolute right, title, claim and interest forever"

—and appointing in the same sentence the executors of the will as guardians of the estate devised. Standing alone, the granting and habendum clauses in this paragraph would unquestionably vest in Nat Jones an estate in fee simple upon the death of the testator. V. S. C. S. art. 3235. Preceding the granting and habendum clauses in this paragraph of the will we find this language:

"As herein indicated, and in the manner indicated, I give and bequeath, subject to the conditions hereinafter shown, and subject to the bequest and provisions above set forth, unto my grandson," etc.

Thus we find that the bequest, which would without the qualifying language quoted result in vesting a fee, is qualified by the testator and converted into a conditional fee, by words used even before the grant. By "provisions above set forth" the testator referred to the items of his will which provided for the payment of his debts, for the purchase of a monument, the legacy to Jacky Jones, and the provision for $1,000 as a trust fund for the maintenance of his cemetery lot. Referring again to the seventh clause, read in connection with the eighth, the meaning is clear as to the "manner" and conditions upon which the bequest rests, as he specifically provided that—

"No part of the estate shall be delivered to my grandson Nat Jones, except moneys for personal expenses, as above provided for, or to the guardian of his person, or vest absolutely in my said grandson, until he shall become twenty-one years of age, at which time there shall be delivered to him in his own absolute right, title and interest, the further sum of $10,000. He shall receive nothing further from my estate until he shall become twenty-four years of age, at which time there shall be delivered to him in his own absolute right, title and interest the further sum of $25,000. He shall receive nothing further from my estate until he shall become thirty years of age, when the residue of my estate shall be delivered to him, provided, however, that such residue may be delivered to him at any time after he shall become twenty-four years of age, if all my executors then administering my estate shall concur in the opinion that it is wise to deliver up to him and shall so deliver it."

We think a reasonable construction of this language, aside from the consideration of the language used in the eighth and ninth paragraphs, and at the beginning of the seventh paragraph, shows that the testator did not intend to vest his grandson with the estate in fee simple and did not understand that the granting and habendum clauses had that effect, and that the title of the grandson would become absolute until the property came into his manual possession or actual control, free from the authority of the executors. In the same sentence of the seventh item he says that no part of the estate shall be "delivered" to the grandson or "vest absolutely" in him until he shall become 21 years of age, at which time there shall be "delivered to him, in his own absolute right, title and interest, the further sum of $10,000." In the next sentence delivery is coupled with the words "absolute right, title and interest in directing the payment of $25,000.00 when the devisee should become twenty-four years of age." We are strengthened in this opinion by the language of the eighth clause, in which the testator provides that, if his grandson should marry and die leaving issue surviving him, then all of the estate "which shall not have been delivered to him, in accordance with the seventh paragraph of his will, shall go in absolute fee simple title to such issue." As contended by appellees, if the fee was vested in the grandson by the seventh clause, then the eighth clause is meaningless. If, however, the effect of the seventh clause is to qualify the fee, and make the estate a conditional one, then the testator had the right, as he did by the eighth clause, to limit the descent of the estate after the death of the grandson to "issue surviving him." Without this clause the grandson's wife would at his death share the property under the statute. By this construction of the will we avoid a conflict between the seventh and eighth clauses. By the ninth paragraph the testator provided that, if the grandson died without leaving legitimate issue surviving him "before my estate shall have passed to and become absolute in him, * * * I will and provide as follows: (1) All and entire my estate and property which shall have passed to and become absolute in my said grandson, shall be a trust fund," etc. It seems clear that the words "passed to" and "become absolute in him" were used in the same sense as the words "delivered to him in his own absolute right, title and interest," as used in the seventh clause, and show conclusively that the testator did not intend by the granting and habendum clauses to vest the estate in fee, and further that it should not so vest until it had been delivered or passed to him by the executors. It was shown that the grandson was not as exemplary in his habits and conduct as the testator desired, and the fact that the will deprived him of the absolute control and use of the property until after he should attain his twenty-fourth year, or, at the option of the executors, his thirtieth year, is evidence of the fact that the grandfather was acquainted with his habits. This is a circumstance to be taken into consideration in determining the quantity of the estate intended to be passed. This construction avoids the repugnancy which would result should we hold that under the seventh clause the devisee was given the property in fee, and shows an intention consistent

throughout the instrument. As said by the Supreme Court in Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145:

"The intention of the testator, as shown by the language used in the instrument, must govern, even if it result in what we might consider unjust or absurd consequences. This intention must be ascertained by considering the entire instrument, and the language of a single clause of it will not govern what is the evident intention in the use of that language, when read in connection with the other provisions."

The case of McMurray v. Stanley, 69 Tex. 227, 6 S. W. 412, is a leading case upon the construction of wills. By the third clause of her will Mrs. Bagley provided:

"It is my will and desire that my beloved husband shall have all my property, both real, personal, and mixed, whatever the interest may be, whether separate or community interest; and that he shall have full power and control over same, to use and dispose of as he may desire."

The fourth clause provides:

"It is my will and desire that at his death, should he have any of said property still remaining in his possession not disposed of or used by him, that the same shall be given by him to my nieces, Jessie McMurray and Flora Brown, daughters of Vina and Taylor Brown."

In construing this language the court followed the cardinal rule of ascertaining from the whole will the real intention of the testatrix, and said:

"We are of the opinion that N. J. Bagley took under the will an estate in fee in the entire property, but that this was in trust for the beneficiaries named in the fourth paragraph of the will except as their right was limited by the right given to him to use and dispose of the property during his lifetime, which was given by the express terms of the will. There are cases that hold that an absolute power of disposition, given to the first taker for his own benefit, renders a subsequent limitation void for repugnancy, and the decisions were made by the courts for whose opinions we have the highest respect. We, however, doubt the propriety of applying such an arbitrary rule in the construction of testamentary papers, for it would often defeat the intention of the testator, as clearly expressed as may be the intention, to confer on the first taker a particular estate, with power to dispose of a part or the whole of the property. At most, it is but a rule, technical in its nature, based upon the presumed intention of a testator, which ought never to be given a controlling effect when, by the clear language of a will, it appears that the testator did not intend that the first taker should have an absolute estate in fee for his own use and benefit. Any other ruling may make the intention of a testator to depend on a presumption of fact, when the testator by his own language has made his intention clear, and thus left no occasion for indulging in presumptions. It is always dangerous to adopt arbitrary rules for the construction of testamentary papers. It is no doubt true that when an estate is given in one part of a will, in clear and decisive terms, such estate cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate. As said by the Court of Appeals of New York: 'The rule that a limitation over to one cannot be based upon a primary devise of an absolute estate to another is founded entirely upon the supposed intention of the testator. When provisions are irreconcilably conflicting one must give way to the other, and that must be adopted which seems to accord most clearly with the testator's primary object in executing the instrument, but when by limiting the character of the first estate the second may also be preserved, it is clearly the duty of the court to do so, unless such a construction is subversive of the general scheme of the will or forbidden by some inflexible rule of law.'"

The case of Laval v. Staffel, 64 Tex. 370, is one in which certain property was devised by the mother to her son, the language of one clause being such as to vest in him the fee, but denying him the right before he completed his twenty-fifth year to dispose of or incumber the property, and further provided that, if he should die before he reached that age, the property should pass to the daughter of the testatrix, and the court said:

"The testatrix * * * intended what her words import, viz. to create a fee-simple title in Alcide Phaneuf, without power of alienation or encumbrance until he arrived at the age of twenty-five, and in case of his death before the happening of that event that the property should pass to the appellant to be held by her in fee-simple."

[5] Our conclusion is that the will, considered as a whole, vested the estate in the grandson, in fee, upon the conditions named. One condition is that he should live until he attained his twenty-first year, and upon fulfillment of this condition $10,000 vested in him absolutely. Another is that he should live to become 24 years of age, and upon the fulfillment of that condition the further sum of $25,000 became his absolutely. At that time he might have taken the whole estate in fee if the executors concurred in the opinion that it was wise to deliver it to him then, but this condition was not fulfilled, and, having died before he reached the age of 30 years, and having died without leaving legitimate issue surviving him, the estate vested in the executors whatever title may be necessary to enable them to carry out the further purposes expressed in the will. In addition to the cases above mentioned, we refer to the following authorities in this state—which we

think sustain us in our holding: Haring v. Shelton, 103 Tex. 10, 122 S. W. 13; Simonton v. White, 93 Tex. 50, 53 S. W. 339, 77 Am. St. Rep. 824; St. Paul Sanitarium v. Freeman, 102 Tex. 376, 117 S. W. 425, 132 Am. St. Rep. 886; McMahan v. McMahan, 198 S. W. 354; Mahon v. Gilliam, 215 S. W. 124; Cottrell v. Moreman, 136 S. W. 124; West v. Glisson, 184 S. W. 1042.

[6,7] Appellants further insist that they are entitled to recover because the trust created by the will has failed. It appears from the record that the testator, through his attorney, and before the execution of the will, had secured the consent of his wife to accept under the will, which in effect gave her the homestead and $1,000 to be paid annually during her life; that he thought his estate at that time amounted to approximately $300,000. It further appears from the record that after the death of Wilson N. Jones his wife refused to take under the will and took her half interest in the estate, which it seems was community property, thus reducing the value of the estate and the fund which the testator expected to be used in the erection of the hospital to something less than $100,000. The contention of appellants in brief is that, because the property and money actually coming into the hands of the executors and trustees after Mrs. Jones had claimed her half interest was not sufficient to establish a hospital such as the testator had in mind at the time the will was executed, there is a failure of the trust, and the property should go to the next of kin. There is no uncertainty in the provisions of the will in so far as the purpose of the testator to erect a hospital is manifested, and the uncertainty, if any, grows out of the fact, as contended by appellants, that the residue in the hands of the trustees is not sufficient to erect and maintain such a hospital as the testator had in mind. "To avoid a will or any of its provisions at the present day for uncertainty, it is not enough that the disposition appears too obscure and irrational for the testator to have been likely to intend it; but, more than this, the gift must be without clear meaning at all, and where both money and description correctly describe some person or thing, the improbability of such a gift, on general principles, shall not defeat it."

By the ninth item of the will testator provides that the trustees named in this item and who it was shown were his personal friends and business associates were vested with whatever title was necessary to execute this provision. They were appointed trustees to establish and maintain in the city of Sherman a hospital, to be known as the "Wilson N. Jones Hospital," primarily for the benefit of the city of Sherman and its citizens, to which there might also be admitted the sick and wounded from other parts of Texas and the Indian Territory. The inference may be drawn from the language of this item that it should in the main be a charity hospital, but provision is made for the treatment of such patients as were able to pay for the care and attention received at a reasonable cost. The testator did not use any language from which it might be inferred that a hospital with any specified number of rooms, beds, attendants, or other particular appointments would enter into its make-up, nor is there any intimation that he intended that a hospital to cost at least $300,000 should be built; otherwise that the charity should fail. These matters were all left to the sound discretion of the trustees, and it was suggested that, if it be found practicable and expedient, after the trust became effective, say within two years, the trustees should form themselves into a body corporate under the laws of the state of Texas for the purpose of carrying out the provisions of the will. He expressly provided that the salaries to be paid and the details of the management and control of the institution were left to the trustees. Appellants contend that in directing that the hospital should be known as the "Wilson N. Jones Hospital" there was manifested on the part of the grantor "a desire to perpetuate his name and thereby connect himself with posterity," and that this clause of the will had its origin in what Justice Moore, in the case of Paschal v. Acklin, 27 Tex. 198, describes as the desire to perpetuate his memory. While this may be true, and while a hospital costing less than $100,000 would not be as imposing a monument to his memory as one costing three times that sum, the court would not be warranted for that reason to declare that the trust had failed because the intent of the testator could not literally be carried into effect. It would still be the duty of the court to give effect to the desire of the testator specifically declared in so far as the funds left in the hands of the trustees would permit, and this the courts have almost universally done under the cy pres doctrine. One feature of the cy pres powers of courts in relation to devises and trusts, or as it is sometimes exercised by courts of equity in the United States, under the doctrine of approximation, is the power by liberal rules of construction and interpretation to enforce a trust for a designated and specific purpose, though created in general terms, and enforce it within the limits of such purpose expressed in the instrument.

[8] In an early case in Texas the cy pres rule as recognized by the English courts was not in terms approved, but the courts of this state exercise an original and inherent jurisdiction over charities upon the principles of the statutes and in obedience to the doctrine of approximation. Where the purpose of a charitable trust is distinctly declared and trustees are appointed by the will to carry out the intention of the testator, and the beneficiaries may be ascertained, it is not

void on the ground of being too indefinite and uncertain to be administered by a court of equity. Gidley v. Lovinberg, 35 Tex. Civ. App. 203, 79 S. W. 831; Inglish v. Johnson, 42 Tex. Civ. App. 118, 95 S. W. 558. The rule that a charity will not be permitted to fail by reason of something occurring after the trust is declared which reduced the fund in contemplation by the grantor at the time of its creation is sustained in other jurisdictions by the great weight of authority. In re Peabody's Estate, 154 Cal. 173, 97 Pac. 184; Eaton v. Woman's Home M. S., 264 Ill. 88, 105 N. E. 747; In re MacDowell's Will, 217 N. Y. 454, 112 N. E. 177, L. R. A. 1916E, 1246, Ann. Cas. 1917E, 853; Gilman v. Hamilton, 16 Ill. 225; Norris v. Loomis, 215 Mass. 344, 102 N. E. 419; Grimke v. Attorney General, 206 Mass. 49, 91 N. E. 899. In Re Peabody's Estate, supra, it appears that testatrix had left certain property for a charitable purpose, and the laws of California provided that where a part of one's property was devised to charitable purposes, only one-third of the fund could be devoted to such uses. In this case the estate was small, and in virtue of the law was depleted by two-thirds of its value. It was urged that by reason of such depletion the trust could not be carried out, and that the legacy lapsed. The Supreme Court of that state, however, declined to adopt this view, saying that—

"An inexpensive cottage of a few rooms would answer the purpose to the extent of its capacity. It is not claimed that the amount available will not suffice to accomplish that result. 'Courts look with favor upon all attempted charitable donations, and will endeavor to carry them into effect, if it can be done consistently with the rules of the law.'"

The Supreme Court of Illinois, in the case of Kemmerer v. Kemmerer, 233 Ill. 327, 84 N. E. 256, 122 Am. St. Rep. 169, held that the fact that the wife declined to take under the will and took according to the statute of descent and distribution, thereby depleting the estate by half, did not interfere with the other half being devoted to the trust.

The court submitted the case to the jury upon two issues as follows:

"No. 1. After deducting the necessary expense of litigation, as shown by the evidence, is the fund on hand of the Wilson N. Jones estate sufficient to establish and maintain a hospital in the city of Sherman?" Answer: "Yes."

"No. 2. Did Wilson N. Jones, at the time of his death, which was the 11th day of June, 1901, have his residence and domicile in the Indian Territory, now the state of Oklahoma, or in the state of Texas?" The jury answered: "Texas."

Appellant requested a number of special issues, by which it was sought to have the jury find what sum of money was necessary to purchase a suitable building site, erect a suitable building, and provide money for the necessary unkeep and equipment of the hospital described in the will, and whether sufficient revenue would be derived from the operation of the hospital to maintain it without other funds, and, if not, then what additional sum would be required annually to maintain it. The material matters sought to be ascertained by these issues are, we think, comprehended and included in the first issue actually submitted to the jury. In order to answer that issue the jury must necessarily take into consideration the matters specifically mentioned in the special interrogatories as matters of evidence; the ultimate fact being presented by the first interrogatory submitted by the court.

[9] A great deal of testimony was introduced showing the cost of other hospitals in Sherman and other cities and throwing light upon the question of expense of equipment and maintenance, and the admission of this testimony is made the basis of several assignments of error. We think this evidence was all relevant. It was the duty of the court, under the rule of approximation, to enforce the trust as declared, if it could be reasonably done, although in a more modest degree than, according to appellant's contention, the testator contemplated at the time he executed his will.

[10] Nor do we think the fact that at the time the will was executed there was no hospitals in Sherman, and that since that time two other hospitals have been erected, should have any bearing upon the action of the court. While the hospitals since erected were not in contemplation by the testator, it was not shown that their existence rendered a third institution of that character unnecessary, or that it would not, to the extent of its capacity, serve the purpose intended.

We find no reversible error in the record, and the judgment is affirmed.