## FIDELITY UNION FIRE INS. CO. v. HICKS. (No. 2113.) *

(Court of Civil Appeals of Texas. Amarillo. April 4, 1923. On Motion for Rehearing April 25, 1923. Rehearing Denied May 2, 1923.)

1. Insurance ⬥138(1)—Valued hail insurance policy held not wagering contract.

Valued hail insurance policies *held* not void as wagering contracts.

2. Insurance ⬥133(1)—Hail policy held not void for uncertainty in description of land and crop.

A policy of hail insurance *held* not void for uncertainty as to description of land and crop.

3. Trial ⬥139(1), 140(1)—Jury are judges of credibility and weight of testimony.

The jury are the judges of the credibility of the witnesses and of the weight to be given their testimony.

4. Appeal and error ⬥1078(1)—Propositions not briefed, considered abandoned.

Propositions not briefed will be considered as abandoned.

5. Evidence ⬥213(2)—Testimony held inadmissible as offer to compromise.

In action on hail insurance policy, court erred in permitting witness for plaintiff to testify that defendant's adjuster stated that the other insurers were paying 90 and 93 per cent. for losses, and that, if plaintiff would settle on 93 per cent., the papers would be filled out; such statement of the adjuster being a proposal to compromise.

6. Appeal and error ⬥301—No review of ruling not made basis of assignment in motion for new trial.

A ruling of court concerning the admission of evidence will not be reviewed where not made the basis of an assignment in the motion for new trial.

7. Appeal and error ⬥301—Improper argument not reviewed where not assigned as error.

Improper argument of counsel will not be considered on appeal where not assigned as error in motion for new trial.

On Motion for Rehearing.

8. Appeal and error ⬥181—Error must be presented to trial court unless fundamental.

When an error occurs during a trial before a jury, such error must be presented to and passed upon by the trial court unless it be fundamental.

9. Appeal and error ⬥1170(7)—Error in admission of evidence harmless where same evidence admitted without objection.

Admission of evidence of one witness was harmless error under rule 62 (149 S. W. x) where other witness testified to the same facts without objection.

Appeal from District Court, Wheeler County; W. R. Ewing, Judge.

Suit by Chas. Hicks against the Fidelity Union Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Ocie Speer, of Fort Worth, for appellant. M. Reynolds, H. B. Hill, and J. B. Clark, all of Shamrock, and Underwood, Jackson & Johnson, of Amarillo, for appellee.

KLETT, J. Charles Hicks was the plaintiff below in a suit against the Fidelity Union Fire Insurance Company to recover on two policies of hail insurance, issued by virtue of applications dated June 7, 1921. One of the policies insured appellee in the principal sum of $1,500 against damage by hail to 60 acres of growing cotton, and the other policy insured appellee and one W. J. Sherwood in the principal sum of $2,500 against damage by hail to one-half interest in 125 acres of growing cotton. This policy

was assigned to plaintiff on October 14, 1921. The plaintiff alleged a total loss, caused by hail falling on the 1st and 3d of July, 1921, and in a trial before a jury recovered judgment for $4,000. The plaintiff's petition contained a copy of each policy and the application therefor. The "policy stipulations and agreements" indorsed on the back of each policy read as follows:

"This policy of insurance is based upon the representations and descriptions contained in the assured's application and diagram of even number herewith, which are hereby made a part of this contract, and the representations of the assured with respect to amounts, limits per acre, premium, ownership, location and description of crops insured hereunder, and it is further stipulated and agreed that any false statement or descriptions made in said application, or any fraud, or attempted fraud, false swearing, or misrepresentations by the assured, whether made before or after a loss has occurred, relative to this insurance or the amount or cause of any loss to the crops herein described, or if any change other than by death of an assured, takes place in the interest, title or possession of the subject of insurance, without the consent of this company indorsed hereon, shall in each and every case render this entire policy null and void.

"If this policy covers corn, this company shall not be liable for damage to corn leaves unless such liability is assumed by special indorsement attached hereto.

"Total concurrent insurance, including this policy, shall not exceed sixty dollars ($60.00) per acre on irrigated land and forty dollars ($40.00) per acre on nonirrigated land; however, in event that the total insurance per acre exceeds this limit, this company shall be liable only for its pro rata part of such limit per acre.

"In event of the total destruction by hail of the crops hereby described, or any part thereof, the amount payable hereunder as to each acre where this policy covers shall be the amount per acre named herein, and in event of partial destruction by hail only of the crops, or any part thereof, described in this policy, the amount payable per acre under this policy shall be in such proportion to the amount per acre specified herein as the damaged portion of said crop or crops bears to the sound condition of the particular crop or crops so damaged.

"Upon adjustment of a loss or losses to the property insured the total amount of insurance named in this policy, and the limit per acre named in this policy on each acre so damaged, shall be reduced in the amount allowed for each and every loss.

"This company shall not be liable for any loss or damage by hail to the crops hereby described unless the loss or damage equals five per cent. (5%) or more of the total hail insurance covering the particular crop so damaged; nor except for such portion as is traceable directly to hail, for any loss or damage to any of the crops herein described from any other cause or causes combined with hail; nor for any loss or damage by hail to any of the crops herein described where such crops have been so injured or damaged from any other cause or causes to preclude a profit over and above the actual cost of harvesting, gathering, threshing and marketing; nor for any loss or damage by hail resulting from the neglect or failure of the assured to cut, pick, pull, gather or harvest overripe crops.

"The liability of this company upon cotton shall not exceed one-third of the ascertained loss from hail happening prior to June sixteenth, and not to exceed two-thirds of the ascertained loss occurring on and/or between June sixteenth and June thirtieth, in that section of Texas lying north of the south line and west of the east line of the counties of Andrews, Martin, Howard, Mitchell, Nolan, Taylor, Callahan, Eastland, Palo Pinto, Parker, Wise, Montague, and not to exceed one-third of the ascertained loss from hail happening prior to May thirty-first and not to exceed two-thirds of the ascertained loss occurring on and/or between June first and June sixteenth, in all of the remaining counties, provided that upon payment of such one-third or two-thirds loss the insurance upon each and every acre described herein shall be reduced in the amount of the total ascertained loss.

"If this policy covers cotton, the liability of this company thereon shall be reduced in the ratable proportion in which said crop, or any part thereof, matures or is reduced by picking, pulling, cutting, or otherwise harvesting, or through damage (other than hail as provided herein) however caused. When the cotton boll opens it shall be considered mature.

"Within forty-eight hours after the happening of any loss or damage by hail to the crops herein described claimed by the assured to equal five per cent. (5%) or more of the total insurance against hail thereon, as hereinbefore provided, the assured shall send by registered mail to this company at Dallas, Tex., a written notice stating the number of this policy, the day and hour of the hailstorm, the amounts of other insurance against hail, if any, and the probable percentage of damage to the crops on each parcel of land herein described; and this company shall not be liable for any loss or damage unless such notice thereof is so furnished to this company within said time and no other form or service of notice shall be deemed proper notice within the provisions and meaning of this policy.

"If the actual loss or damage is found to be less than five per cent. (5%) of the total insurance against hail on said crops, as hereinbefore provided, then the assured shall pay all expenses of investigating said claim. Within sixty days after the happening of any such loss or damage equaling five per cent. (5%) or over, unless such time be extended in writing by this company, the assured shall furnish to this company at Dallas, Tex., a statement in proof of the loss, signed and sworn to, setting forth the number and date of this policy, the location, description, and acreage of the land upon which the crops are situated, a description of the crops damaged, and the percentage of damage to the crops contained in each parcel of land herein described, and a statement specifically detailing how and in what manner the amount claimed was determined; what, if any, other insurance; also whether crop has suffered previous loss; if so, how much, and by whom insured. No denial of liability or other act on the part of this company, or on the part

of any agent, adjuster, or other representatives, shall waive or dispense with the furnishing of such sworn statement in proof of loss; and this company shall not be liable under this policy for any loss or damage of which the proof herein required is not furnished to this company within the time herein provided. Any loss or damage within the provisions of this policy, ascertained, determined and proven as herein provided, shall be payable sixty days after satisfactory proofs of the loss or damage as provided by this policy have been received at the office of this company at Dallas, Texas.

"No suit or action, at law or in equity, for the recovery of any claim for loss or damage under this policy, shall be sustainable until after full compliance by the assured with all of the foregoing requirements, nor unless commenced within six months next after the date of the loss, unless otherwise provided by statute."

The defendant answered by general demurrer, special exceptions, general denial, and by the following special pleas.

The special defenses as to liability for loss of the crop on the 60 acres were: (a) False statement in the application as to ownership; (b) false statement in application as to the number of acres; (c) false statement in the application as to concurrent insurance; (d) false statement in the proof of loss as to the time of the loss; and (e) false statement in the proof of loss as to ownership.

The special defenses as to the 125 acres were: (a) False statement in the application as to ownership; (b) false statement in the application as to the acreage; (c) false statement in the proof of loss as to concurrent insurance; (d) false statement in the application as to the diagram of the cotton field; (e) false statement in the proof of loss as to the time of loss; (f) false statement in the proof of loss as to the ownership; and (g) transfer of the policy by Sherwood to the plaintiff without the defendant's consent.

In connection with these special defenses the defendant alleged in paragraph 11 of the answer:

"This defendant would show that each and all of the foregoing representations, statements, and affidavits were false and untrue, and were with respect to the amounts, ownership, location, and description of the crops insured, and that the false statements and fraud and false swearing and misrepresentations in connection with said proofs of loss were relative to the insurance involved herein, and the amount or cause of the loss to the crops herein embraced and each and all were in violation and breach of the plaintiff's said contracts herein sued on, and under the terms and stipulations of said contract rendered each of said policies entirely null and void; that the same constituted and were a breach and avoidance of said contracts of insurance in material respects, and each and all of said statements and misrepresentations and fraud and false swearing were in their nature such as could not in any case have caused or contributed to

cause the happening of the event upon which plaintiff's loss herein could or should become payable, and therefore said misrepresentations, misstatements, fraud, and false swearing constitute and are a just and lawful defense in favor of this defendant in avoidance of said policies, and are here pleaded as such."

The defendant denied that the damage was equal to 5 per cent. of the total amount of hail insurance, and specially alleged that, after the plaintiff had notified the defendant of the pretended loss, the plaintiff plowed up the lands where said crops had been growing for the fraudulent purpose of depriving the defendant of a reasonable opportunity of inspecting the fields and ascertaining the extent of the loss. With reference to the concurrent insurance, the defendant denied that the lands were irrigated lands. The defendant further specially alleged that the plaintiff falsely swore in the proof of loss that the 60 acres had not been damaged by causes other than hail, when in fact said crop had been injured by dry weather, and also falsely swore that the plaintiff had a good stand of crop before the hail, when in fact the plaintiff did not have a good stand, because, the defendant alleged, the crop had been injured by hail prior to July 1st. A similar allegation was made with reference to the 125 acres, but in connection with said pleas it was expressly stated in the answer that—

"All other representations, statements, affidavits, acts and conduct of the plaintiff, * * * could not in any wise have caused or contributed to cause the event upon which a loss became or could become payable to plaintiff."

With reference to concurrent insurance as to both of said crops, it was alleged that the false statements as to the existence of other insurance were made as a result of a conspiracy entered into on the part of plaintiff "and divers other persons, to this defendant unknown, for the purpose of wronging, cheating, and defrauding this defendant and other hail insurance companies in the matter of collecting wrongfully hail insurance."

The special issues submitted to the jury and the answers thereto read as follows:

"No. 1. Did the plaintiff, Charles Hicks, and W. J. Sherwood, or either of them, misstate or misrepresent in their application for hail insurance thereon the number of acres of cotton in said section No. 49? Answer 'Yes' or 'No.'

"A. No.

"No. 2. Did the plaintiff, Chas. Hicks, and W. J. Sherwood, or either of them, in their application for hail insurance thereon, make any misdescription and false statement in the delineation or diagram contained in said application as to the location of the crops mentioned in said application? Answer 'Yes' or 'No.'

"A. No.

"No. 3. Did the plaintiff, Chas. Hicks, and W. J. Sherwood, or either of them, in the sworn proof of loss submitted by them to the defendant, as the same was submitted, concerning the loss by hail to the crop on section No. 49, make any false statement or misrepresentation as to the total insurance, including this defendant's policy, upon said crop? Answer 'Yes' or 'No.'

"A. No.

"No. 4. Did the plaintiff, Chas. Hicks, and W. J. Sherwood, or either of them, in making the sworn proof of loss, as the same was made, concerning the damage by hail to the crop of cotton in section No. 49, make any false statement or misrepresentation with respect to the ownership of said property at the time the defendant's policy was issued thereon? Answer 'Yes' or 'No.'

"A. No.

"No. 5. What per cent. of the hail damage, if any, received by hail to the crop of cotton on section No. 49, was caused by hail, if any, prior to July 1, 1921?

"A. No per cent.

"No. 6. How many acres of cotton do you find actually to have been contained in plaintiff's crop of cotton on section No. 49 at the time the same was injured by hail, if it was so damaged?

"A. 125 acres.

"No. 7. How many acres of cotton do you find to have been contained in plaintiff's crops on section No. 49 at the time the defendant's policy of hail insurance was issued thereon?

"A. 125 acres.

"No. 8. Did the plaintiff, Chas. Hicks, falsely state or misrepresent the interest owned by him in the 60 acres of cotton in section No. 53 in the written application made by him for insurance thereon? Answer 'Yes' or 'No.'

"A. No.

"No. 9. Did the plaintiff, Chas. Hicks, in his application for hail insurance thereon falsely state or misrepresent the number of acres contained in the field of cotton on section No. 53? Answer 'Yes' or 'No.'

"A. No.

"No. 10. Did the plaintiff, Chas. Hicks, in his sworn proof of loss submitted by him to the defendant company concerning his loss by hail to the cotton on section No. 53, make any false or untrue statement as to the time when said cotton crop was damaged by hail? Answer 'Yes' or 'No.'

"A. No.

"No. 11. Did the plaintiff, Chas. Hicks, in his sworn proof of loss with respect to his loss by hail on his crop of cotton in section No. 53, make any false statement with respect to his ownership of said crop of cotton at the time said policy of insurance was issued thereon? Answer 'Yes' or 'No.'

"A. No.

"No. 12. Did the plaintiff, Chas. Hicks, in the sworn proof of loss submitted by him to the defendant concerning the loss by hail to the crop of cotton on section No. 53, make any false statement or misrepresentation as to the total insurance upon said cotton, including this defendant's policy thereon? Answer 'Yes' or 'No.'

"A. No.

"No. 13. Did the plaintiff, Chas. Hicks, in the sworn proof of loss submitted by him to defendant, concerning the loss by hail to the crop of cotton on section No. 53, make any false statement or misrepresentation as to the time when said crop was damaged by hail? Answer 'Yes' or 'No.'

"A. No.

"No. 14. Did the plaintiff, Chas. Hicks, in the sworn proof of loss submitted by him to defendant as to loss by hail upon the crop of cotton situated in section No. 53, make any false statement or misrepresentation as to the plaintiff's absolute, unconditional ownership of said property at the time defendant's policy thereon was issued? Answer 'Yes' or 'No.'

"A. No.

"No. 15. What per cent. of the hail damage, if any, to plaintiff's cotton crop on section No. 53 was done by hail prior to July 1, 1921?

"A. No per cent.

"No. 16. How many acres do you find to have been actually contained in plaintiff's crop of cotton on section No. 53 at the time same was damaged by hail, if it was so damaged?

"A. 60 acres.

"No. 17. What number of acres of cotton do you find to have been contained in the southeast quarter of section No. 53 at the time defendant issued its policy of insurance thereon?

"A. 60 acres.

"No. 18. Did the plaintiff, Chas. Hicks, and W. J. Sherwood, or either of them, in the sworn proof of loss submitted by them to the defendant as to the loss by hail to the crops situated on section No. 49, make any false statement or misrepresentation with respect to the time when said crop was damaged by hail? Answer 'Yes' or 'No.'

"A. No.

"Plaintiff's special issue No. 1: What per cent. of injury, if any, do you find that the cotton covered by policy No. 10218, in section 49, sustained from hail only on or after July 1, 1921?

"A. 100 per cent.

"Special issue No. 2: What per cent. of injury, if any, do you find that the cotton covered by policy No. 10217, on the south half of section No. 53, sustained from hail only on or after July 1, 1921?

"A. 100 per cent.

"Special issue No. 3: Did the witness Dick Connaly knowingly and intentionally insert in the proof of loss covering the cotton on the east half of section No. 49, make false statements with reference to other insurance and for the purpose and with the intention of creating thereby a defense against the policy of insurance sued on and covering said cotton?

"A. Yes.

"Plaintiff's special issue No. 4: Did the witness Dick Connaly know at the time he prepared the proof of loss offered in evidence and covering the cotton crop on the east half of section No. 49 that Clinton Scoggins held two policies of insurance, aggregating $35 per acre on a half interest in said cotton belonging to Clinton Scoggins?

"A. Yes.

"Defendant's special issue No. 3: Did the plaintiff, Charles Hicks, and W. J. Sherwood, or either of them, in their application for insurance, falsely state or misrepresent their

true interest or ownership in the 125 acres of cotton on section No. 49?

"A. No.

"Defendant's special issue No. 16: Did the plaintiff, Charles Hicks, in his sworn proof of loss submitted to defendant concerning the loss by hail to the crop of cotton on section No. 53, make any false statement or misrepresentation as to whether or not there was any other insurance on said crop?

"A. No.

"Defendant's special issue No. 26: What was the total concurrent insurance per acre on the cotton crop on section No. 49, including this defendant's policy, at the time same was damaged by hail, if it was so damaged?

"A. $35.

"Defendant's special issue No. 27: What was the total concurrent insurance per acre upon the plaintiff's cotton crop in section No. 53, including this defendant's policy, at the time said crop was damaged by hail, if it was so damaged?

"A. $25."

[1] In the first three propositions appellant takes the position that, if the policies are contracts of indemnity, the plaintiff cannot recover because he did not prove the value of the crop destroyed, and that, if such policies are valued policies, they are void as wagering contracts. We cannot sustain these propositions, as the same questions were decided adversely to appellant by this court in considering the same form of policy in Fidelity Union Fire Ins. Co. v. Mitchell (Tex. Civ. App. No. 2027) 249 S. W. 536. We refer to the opinion rendered and the authorities cited by Judge Boyce in the Mitchell Case.

[2] Appellant's fourth proposition is that—

"The policy sued on being void for uncertainty and indefiniteness as to the said matter of insurance the defendant's requested peremptory instruction should have been given."

In support of this proposition the appellant makes the following statement:

"Policy No. H–10218, covering the 125 acres in block 49, thus describes the subject-matter of the insurance: 'On one-half int. in 125 acres in cotton in section 49, T. 17, R. * * * all situated in the county of Wheeler, state of Texas, as per diagram below.' Following this description appears a diagram in the form of a square, subdivided into quarters, the square representing a section of land. In the southeast quarter of such square is delineated a field, practically square, entirely within the boundaries of such southeast quarter, no part of which field is in common with the lines of such quarter, and from which delineation it is impossible to locate the 125 acres in controversy. Similarly, the subject-matter of policy No. H–10217, covering the 60 acres, is thus described: 'On all int. in 60 acres of cotton in section 53, T. 17, R. * * * all situated in the county of Wheeler, state of Texas, as per diagram below.' Following this is a plat in the form of a square, representing a section of land, subdivided into quarters, in the southeast quarter of which a rectangular field is delineated about the center of such location, entirely within the boundaries of such quarter and not marked or delineated in such a way as that the same may be identified or located on the ground."

Under the tenth proposition appellant also attacks the jury's answer to special issue No. 2. As we understand the appellant, it is not insisted that the description is insufficient to identify the crops referred to. In fact, the description was sufficient to enable defendant's agent, Dick Connaly, to find and measure the field. A similar contention was made by appellant in the Mitchell Case, supra, and there overruled. We also refer to the authorities cited in said opinion to support the decision. We find no occasion to recede from the former ruling.

Plaintiff's petition contains a copy of each policy and the application therefor. It appears from each of said contracts introduced in evidence that same took effect 24 hours after issuance, and remained in force until October 1, 1921. Some of the damage was done by hail on July 1, 1921, and the trial court submitted to the jury plaintiff's special issues 1 and 2, inquiring as to the percentage of loss "on and after July 1st." The appellant objected to the submission of these issues, and also asked for peremptory instruction on the ground that there is no pleading of damage sustained on July 1st. Appellant also submits fundamental error, and in support thereof quotes the plaintiff's allegation of conclusions in the original petition that defendant became obligated to pay the plaintiff the amount agreed on for all damage done by hail "subsequent to July 1, 1921." We find from an examination of the petition that it not only contains full copies of the policies and applications showing that the company insured against loss on July 1st, but it also charges as to each crop damaged by hail on the 1st and 3d of July "that, by reason of the terms and conditions of said policy, and that provision thereof set forth in paragraph 3 of this petition, the defendant became bound, obligated, and promised plaintiff to pay him the full amount" agreed upon. We think the petition, while perhaps not drawn with the care it should have been, is sufficient to cover losses on July 1st, as well as losses subsequent thereto. We therefore overrule the fifth, sixth, and twenty-fifth propositions presenting these defenses.

Under the seventh proposition appellant says there is no pleading by plaintiff raising the issue of estoppel submitted to the jury in plaintiff's third requested special issue, and, under the eighth proposition, says there is no evidence of estoppel justifying the submission of plaintiff's fourth requested special charge. The evidence shows that Dick Connaly was adjuster for the company, and there is testimony that he made the proofs of loss and that certain slips were

added after the proof of loss was signed by the plaintiff. Under the defendant's eleventh paragraph, charging the plaintiff with fraudulent conduct and false swearing, the pleading was probably sufficient. However, we regard as immaterial the plaintiff's third and sixth requested issues as to "concurrent insurance," for the reason the evidence shows the other insurance was on the other half interest, and not on plaintiff's half interest in the 125 acres. The plaintiff only insured his one-half interest in the 125 acres, as shown by the policy; hence we overrule the two propositions.

[3] Under the ninth, eleventh, twelfth, thirteenth, and fourteenth propositions appellant attacks the findings of the jury in answer to the first, sixth, seventh, sixteenth, and seventeenth special issues, inquiring as to the number of acres. The plaintiff and Scoggins estimated in various ways the acreage. From the facts furnished the jury could find that their measurements were reasonably accurate. Defendant's controverting evidence was based upon the testimony of the company adjuster, who stepped off the land and drew a diagram, which he furnished the county surveyor for the purpose of computing the acreage. From the dimensions furnished by the company adjuster the county surveyor calculated the acreage to be much smaller than that testified to by plaintiff's witnesses. But the jury had the right to disregard the testimony of the defendant and adopt that of the plaintiff under the rule that the jury are the judges of the credibility of the witnesses and of the weight to be given their testimony. Hence we hold that the evidence is sufficient to support the findings of the jury. Not only do we find that the facts are against the appellant, as shown by the answers of the jury, but we believe that, under the defendant's pleading of the special defenses, the defendant is precluded by the language of the following state statutory provisions:

"Art. 4947. *Misrepresentation Must be Material to Avoid Contract.*—Any provision in any contract or policy of insurance issued or contracted for in this state, which provides that the answers or statements made in the application for such contract, or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case. (Acts 1903, p. 94, art. 3096aa.)

"Art. 4948. *No Defense Based upon Misrepresentation Valid, Unless, etc.*—In all suits

brought upon insurance contracts or policies hereafter issued or contracted for in this state, no defense based upon misrepresentations made in the applications for, or in obtaining or securing the said contract, shall be valid, unless the defendant shall show on the trial that, within a reasonable time after discovering the falsity of the misrepresentations so made, it gave notice to the assured, if living, or, if dead, to the owners or beneficiaries of said contract, that it refused to be bound by the contract or policy; provided, that ninety days shall be a reasonable time; provided, also, that this article shall not be construed as to render available as a defense any immaterial misrepresentation, nor to in any wise modify or affect article 3096aa (4947).

"Art. 4949. *Shall Not Constitute Defense, Unless Shown, etc.*—Any provision in any contract or policy of insurance issued or contracted for in this state, which provides that the same shall be void or voidable, if any misrepresentations or false statements be made in proofs of loss or of death, as the case may be, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract or policy, unless it be shown upon the trial of such suit that the false statement made in such proofs of loss or death was fraudulently made, or misrepresented a fact material to the question of the liability of the insurance company upon the contract of insurance sued on, and that the insurance company was thereby misled, and caused to waive or lose some valid defense to the policy. (Id., art. 3096cc.)"

[4] The fifteenth, sixteenth, and seventeenth propositions have not been briefed, and will therefore be considered as abandoned.

[5] On the trial of the case W. J. Sherwood, witness for plaintiff, testified:

"They came back to my office in a car, got out and came in, and Connaly (defendant's adjuster) says: 'W. J., other people has paid 90 and 93 per cent. out there; and if you will settle on 90 per cent. we will fill this out'" (such testimony referring to the two crops).

Defendant objected to the answer of the witness upon the ground that the same is shown to be an offer of settlement or compromise on the part of the defendant. The objection was overruled, and the testimony admitted. The appellant's eighteenth proposition assigns error upon the action of the trial court. We believe that the offer shows upon its face that it is a proposal to settle and is in violation of the general rule rendering offers of compromise inadmissible. Sullivan v. Railway Co., 110 Tex. 360, 220 S. W. 769. We therefore sustain the eighteenth proposition.

Appellant objected to the admission of the policies in evidence on the grounds set forth in the first four propositions presented and passed on. Following the decisions made, we overrule the appellant's nineteenth and twentieth propositions, addressed to the admissibility of the policies.

[6] In answer to his counsel's question, plaintiff testified, over the defendant's objec-

tions, that there were 160 acres in the southeast quarter of the section inquired about. The objection was that the witness had not shown himself qualified, and that the statement was a conclusion and opinion of the witness. The defendant excepted to the action of the court in overruling the objection. Without ascertaining from the record whether the ruling was prejudicial we overrule the twenty-first and twenty-second propositions presenting the exception on the ground that the ruling was not made the basis of an assignment in the motion for new trial. The only assignment which we have found raising the point is contained in a list of so-called "supplemental assignments," filed after the motion for new trial had been ruled on. The trial court did not pass on the supplemental assignments. We therefore rule that the error, if any, was not preserved and presented in the time and manner required by law.

[7] Under the twenty-third and twenty-fourth propositions appellant insists the case should be reversed on the argument made by counsel for plaintiff in the closing address to the jury, even though the argument had been excluded and the jury instructed not to consider the same. Although it appears that the argument was improper, we fail to find in the record any showing that the action of the attorneys was assigned as error in any motion for new trial passed on by the trial court. For the reasons already indicated, the propositions cannot be considered.

The judgment of the trial court is reversed, and the cause remanded.

### On Motion for Rehearing.

[8] In his motion for rehearing appellant argues that our ruling in refusing to consider the "supplemental assignments" is in conflict with the following authorities. Hess v. Turney, 109 Tex. 208, 203 S. W. 593; Barkley v. Gibbs (Tex. Com. App.) 227 S. W. 1099; Harlan v. Flooring Co. (Tex. Com. App.) 231 S. W. 348; Marvin v. Kennison, 230 S. W. 831 (by this court). We think our ruling is in accord with these decisions, which recognize the rule as we construe them, that, when an error occurs during a trial before a jury, such error must be presented to and passed upon by the trial court unless it be fundamental. We overrule the appellant's motion for rehearing.

[9] Appellee claims, in his motion for rehearing, that it was harmless error for the trial court to admit in evidence witness Sherwood's testimony to the effect that the company adjuster, Dick Connaly, "said other people has paid 90 and 93 per cent. out there, and if you will settle on 90 per cent. we will fill this out." In support of this ground appellee shows, for the first time,

from the statement of facts that other witnesses testified without objection that the cotton damaged in the neighborhood of plaintiff's farm was a total loss, that other companies were adjusting on the basis of 90 and 93 per cent., and that the company holding a policy covering the other one-half interest in the 125 acres in controversy paid Mr. Scroggins, the owner, 90 per cent. in settlement. One of the witnesses, Mr. Johnson, testified it was on basis of 93 per cent. The witness Sherwood also testified, without objection, that, while Adjuster Connaly was making out proofs of loss for plaintiff, the adjuster stated, "Well, we'll adjust it at 90 per cent." Sherwood added, without objection:

"When Mr. Dick Connaly drew up this document he said it would be about 10 days before we would receive our draft—said we would receive our draft in about 10 days, on the basis of 90 per cent. loss, the amount specified in the document."

The appellant's silence during the admission of the testimony is indicative of an acquiescence in the propriety of the proceeding. If there was injury the appellant suffered part of it to be done without complaint when it was his duty to speak. To what extent he is responsible for the injury an appellate court cannot say. Under rule 62 (149 S. W. x) we cannot hold that the error was such a denial of the rights of the appellant as that it "probably did cause the rendition of an improper judgment." We believe the rule requires us to consider the error harmless. Strachbein v. Gilmer (Tex. Civ. App.) 202 S. W. 333(8); Hadnot v. Hicks (Tex. Civ. App.) 198 S. W. 359(10), writ refused.

The appellee's motion for rehearing is granted, and the judgment of the trial court affirmed.